Moncure, P.,
delivered the opinion of the court.
After stating the case he proceeded: The court is of opinion, that according to the principles of *339 the common law, the owner of a wharf who re■ceives, or is entitled to receive, wharfage for vessels moored to said wharf, is bound to use at least ordinary care and diligence in keeping the water adjacent to such wharf, in which vessels lie while moored thereto, free from obstructions, and is liable for any damage done to any such vessel by reason of the neglect of such duty; and that the same principles apply, whether such owner be an individual or a corporation, whether such corporation be private or municipal.
In Shearman and Redfield on Negligence, § 585, the law is thus laid down by those authors, who seem to be fully sustained by the authorities cited in their notes to that section: “ The owner or lessee of a dock, pier or wharf, receiving tolls for its use, is bound to keep it in reasonably good condition, so that, as far as by the use of ordinary care, diligence and skill, he can make it so, it shall be fit for the use of vessels, and safe for all persons to enter upon who have a right of access. If the wharf owner receives tolls from the public generally, he owes this duty to the public, and is liable to any one specially injured by his neglect to fulfil it.55 “It is negligence to permit anything to project from the side of a wharf in such manner as, by any probable combination of circumstances, to endanger the safety of vessels moored to the wharf. They are entitled to the unobstructed use of the water, whether it rises or falls. A wharf or dock owner receiving toll, does not fulfil his obligations by simply keeping the wharf or dock clear of obstacles and defects, which are visible upon an external inspection. If the general experience of persons in charge of wharves and docks has made it a fact of common notoriety among them, that such property is liable to become defective and dangerous from causes that can *340 not be detected from a mere external inspection, the owner is bound to make such further examination as is usual among owners of like property, having interests of their own to protect from damage, of equal maoühude, with tbose of the community in general,, which are exposed to danger in the particular case. A dock ought to be dredged and cleaned with sufficient frequency to enable all such vessels as are accustomed to enter it to do so without stranding or dragging. And if for any reason the owner of the dock cannot do this, or claims to be released from the obligation to do so, he must withdraw all express or implied invitation for the entry of vessels; and if they are accustomed to enter, paying toll, he must close the dock, or in some other way distinctly warn them to-keep out of it. The existence of piles or other obstructions under the water, and projecting above the ground at the bottom, is presumptive evidence of neg~. ligence; and it is not a sufficient excuse to show that the owner, at the time of an injury thus caused, did not place the obstructions there, or even know of their existence. He should have tested the safety of the dock. But the owner of the dock does not insure vessels against injury in it, and, if he has taken all the-care that can reasonably be expected of him, he is not liable for damage done to a vessel by an obstruction in the dock. The master of a vessel has a right to presume that all parts of a dock are safe, and is not guilty of contributory negligence by taking a place which might, under other circumstances not anticipated by him, be less safe than another.” In the notes to this-section the following among other cases are cited,, which were much relied on in the argument of this case, and seem to be very important. Parnaby v. Lancaster Canal Co., 11 Ad. & El. 223; Mersey Docks Trus *341 tees v. Gibbs, Law Rep. 1 H. of L. 93; and Pittsburgh v. Grier, 22 Penn. St. R. 54. In Parnaby v. Lancaster •Canal Co., in which the complaint in the declaration was of a breach of duty alleged to have been created by a statute, the court of exchequer chamber (affirm■ing the judgment of the court of Q. B.) held that such ■duty was not created by the clause of the statute referred to in the declaration, but arose upon a common law principle, that the owners of a canal, taking tolls for the navigation, were bound to use reasonable care in making the navigation secure, the want of which reasonable care might be collected from the declaration, although the complaint was ostensibly founded on the statute. In the Mersey Docks Trustees v. Gibbs, in which the judgment of the court of exchequer chamber was affirmed by the House of Lords,, it was held that the principle on which a private person, or a company is liable for damages occasioned by the neglect of servants, applies to a corporation which has been entrusted by .statute to perform certain works, and to receive tolls for the use of those works, although those tolls, unlike the tolls received by the private person or the company, are not applicable to the use of the individual corporators, or to that of the corporation, but are devoted to the maintenance of the works, and, in case of any surplus existing, the tolls themselves are to be proportionably diminished. Parnaby v. The Lancaster Canal Co. (supra), which was the case of an ordinary corporation, was approved of, and the principle of liability for negligence there established, was applied to a corporate body entrusted by statute with the performance of a public duty, and receiving therefrom no profits or emoluments for itself. And it was further held, that if knowledge of the existence of a cause of mischief makes persons re *342 sPons^e f°r injury it occasions, they will be equally responsible when, by their culpable negligence, existence is not known to them. And in Pittsburgh v. Grier, it was among other things held [Black, C. J., delivering the opinion of the court), that a city being in possession of a public wharf within its limits, exercising exclusive supervision and control over it, and receiving tolls for its use, is bound to keep it in proper condition for use; that the corporation is liable for special injury sustained by an individual in consequence of its neglect to keep the wharf in order, and case may be sustained therefor; that it was not material whether the city had adopted ordinances for the regulation of the wharf, or having such, n'églected to enforce them—the responsibility is the same in either event;, and that when the plaintiff has sustained injury from the neglect of a public duty, which the defendant has impliedly promised to perform, either case or assumpsit may be maintained. In that case, a steamboat was landed at a moderate stage of water, at a proper place at the Monongahela wharf at Pittsburgh, on which piles of iron metal had been lying for a long time, and nearer to the water’s edge than was allowed by the ordinances of the city. The river afterwards rose, and the boat struck on the iron, and to avoid such danger was backed into the stream, where it was struck by a floating body, and further injured and sunk. It was held that the wharf, being under the exclusive control and regulation of the city authorities, (whether rightfully • or not, held not to be material), who derived a revenue from its use, the wharfage of the boat having been paid, the city authorities having been guilty of negligence in not having the iron removed, the corporation was liable in an action on the case to the owners of the boat for the injury sustained; *343 that though some other place on the wharf might have heen more secure, the captain of the boat had a right to select the one in question, which was at the time safe, the faith of the city being pledged to render it secure; and that it was not material that the city authorities did not foresee the danger as likely to occur.
There are other sections of S. & B. on Negligence, which have a material bearing-on this case, among which are §§ 120, 135 and 137. In § 120 it is stated, among other things, that “ there is nothing in the character of a municipal corporation which entitles it to an immunity from liability for such malfeasances, as private corporations or individuals would be liable for in a civil action.” Many eases are referred to in the notes to that section, and among them is the case of Mersey Docks Trustees v. Gibbs, supra, of which there is a very full statement, the decision in which case was afterwards followed in Coe v. Wise, 1 Q. B. L. R. 711. In § 135, it is stated that “ the rules of law governing the relation of master and servant, and principal and agent, are as applicable to corporations as to natural persons; and a municipal corporation is liable for the carelessness or neglect of its agents, on the same principle that a natural person is liable for damages resulting from the carelessness, unskillfulness or wrong doing of his agents. § 137 is to the same effect. Of course municipal corporations in the exercise of their political, discretionary and legislative authority, are not liable for the misconduct, negligence or omissions of the agents employed by them. But municipal corporations, in discharge of ministerial or specified duties, assumed in consideration of the privileges conferred by their charter, are liable for the misconduct, negligence or omissions of their agents; and this *344 there he the absence of special rewards or advantages. The distinction is so stated in The City of Richmond v. Long’s adm’rs, 17 Gratt. 375. The remarks just made by us, concerning the liability of a municiPa^ corPoration, apply only to cases arising under the second branch of the distinction, the principles of which are strongly applicable to a case in which a municipal corporation is a wharf owner, entitled as such to receive wharfage. See Dillion on Municipal Corporations, ch. 23, and notes.
We have examined the authorities referred to by the learned counsel for the city of Petersburg, to wit: Home v. Richards, 4 Call 441; Mayor v. Cunliff, 2 Comst. 165; Sh. & Red. on Negligence, §§ 123, 126, 147, 148 and 407; Wharton on Negligence, § 52; City of Richmond v. Long’s adm’rs, 17 Gratt. 375; Fowle v. The Common Council of Alexandria, 3 Pet. R. 398; The City of Providence v. Clapp, 17 How. U. S. R. 161; Coe v. Wise, 5 Best & Smith (117 E. C. L. R.) 439; Weightman v. The Corporation of Washington, 1 Black’s R. 39; Mayor v. Sheffield, 4 Wall. U. S. R. 189; Withers v. The North Kent Railway Company, 3 Hurlst. & Nor. 969. But without stating the purport of these authorities, it is sufficient to say that we do not consider any of them to be in conflict with what we have stated, as in our opinion the law and the authorities cited by us in support thereof. None of the cases referred to by the counsel are cases of a wharf owner, receiving or entitled to receive wharfage; in which case the obligation of such owner to keep his wharf in repair, and to keep the water adjacent thereto free from obstruction, as before stated, seems to be well settled. And though in an action for negligence in such a case, the burden of proving such negligence, devolves, of course, on the plaintiff, yet proof of the existence of an obstruction *345 in such a case is, generally at least, prima facie evidence of such negligence.
That it is made the duty of the port warden to see ■that the navigation of the Appomattox river, in the city of Petersburg, is kept free from obstruction, and to attend to the duties of the city, in regard to the city wharf, can make no difference. The port warden in this matter is but the agent of the city, and a principal is always bound for the acts and neglects of his agent in the execution of the agency. The same rule on this subject, which applies to a private principal, applies to a corporation, whether ordinary or municipal, and a fortiori to a corporation, which can only act by an agent.
Nor can it make any difference that it has been made the duty of the Lower Appomattox company to dredge and remove obstructions from the river at and below Petersburg, under the acts passed December 8th, 1824 (acts 1823-’4, p. 45, ch. 48), and March 28th, 1851 (acts of 1850-’51, p. 72, ch. 91). It seems that the city is now in effect the Lower Appomattox company, owning all the stock of that company, and electing its directory, which company, therefore, is a mere agency of the city. But even if it were a separate and independent organization, its obligation to perform a duty, which the city is also bound to perform, on common law principles, would not relieve the city from its common law liability for the non-performance of such a duty. If so,, a party affected by the neglect of such duty might he injured by this substituted liability of the company.
Nor can it make any difference that the United States have made appropriations to the improvement of the navigation of the river, and have occasionally dredged it. While such operations are beneficial to *346 city, they do not relieve it from its common law liability in regard to the city wharf.
That no wharfage was actually received by the city th*8 case, and that it does not usually charge wharf-age in such cases, can make no difference. It is sufficient that the city was entitled to make the charge, and that wharfage was due by the vessel owner. He could not know that no wharfage would be received of him. He came to the city with his vessel, laden with a cargo of coal consigned to merchants of the city, and not being able to go up at once to the wharf nearest his consignees, he moored his vessel to the city wharf, relying on the city for the safety of his vessel, expecting and intending of course to pay the legal wharfage-
The court is further of opinion that the circuit court did not err in overruling the demurrer to the fourth count of the declaration. Without setting out the-substance of that count here, it is sufficient to say that it sets out a good cause of action, and is free from just ground of objection. The demurrer to the third count was sustained, and there was no demurrer to the first or second count.
The court is further of opinion, that the circuit court did not err in giving the six instructions asked for by the plaintiff; nor in refusing to give the first, second, third and fourth instructions asked for by the defendant ; nor in giving the instruction which it gave of its own motion. These instructions, taken altogether, correctly expounded the law, and were not calculated to mislead the jury. (The court here read the instructions, and commented briefly upon them.)
The court is further of opinion, that the circuit court .did not err in overruling the motion of the defendant to set aside the verdict and grant a new trial upon the ground that the verdict is contrary to the *347 law and the evidence in the cause. It is not necessary to decide whether the certificate is of evidence or of facts. Regarding it as a certificate of facts so far as it is possible so to regard it, and even viewing it most favorably for the defendant, still we think it fully sustains the verdict. The plaintiff’s vessel while lawfully lying at the city wharf, struck against a pile at the bottom of the river, about two and a half feet from the wharf, which penetrated the bottom of the vessel, and caused it to sink. It is probable from the certificate of facts, that the said pile was a part of the wharf, at least originally. But whether so or not it evidently had been there a long time. It was buried more than two feet in the sand, projected from a foot and a half to two feet above the bottom, and leaned from the direction of the wharf towards the opposite side of the river. There had been no dredging at that point, nor within two feet of the wharf, either by the defendant or by the Lower Appomattox company, or the United States, or any other agency. Due diligence on the part of the wharf owner required that there should be such a dredging at reasonable intervals of time; for the existence of such an obstruction occasionally might reasonably have been expected, and the risk of injury to vessel owners who are invited to come to the wharf required the exercise of such diligence. Had there been such dredging during the year next preceding the injury complained of, the obstruction which occasioned it would no doubt have been discovered, and might have been removed in time to prevent the injury. In fact it could be seen from the surface of the water at low tide.
Upon the whole, we are of the opinion that there is no error in the judgment, and that it ought to be. affirmed. "
Judgment aeeirmed.