# Richmond.

CHALKLEY V. CITY OF RICHMOND.

November 12th, 1891.

Absent, *Lewis*, P.

1. MUNICIPAL CORPORATIONS—*Drains and sewers—Liability.*—Where a person is permitted and aided by a city to alter the course of a sewer over which it has assumed control (it matters not by whom it was originally constructed), and such alteration is so negligently effected as to cause the water and filth to flow into the plaintiff's cellar;

HELD:
   The city is liable for the damages resulting therefrom.

2. IDEM—*Nuisance—Abatement—Liability.*—A sewer controlled by a city and so constructed that it causes water and filth to flow into a private person's cellar, is a nuisance, and if, when notified, it fails to abate it;

HELD:
   The city is liable for the damages resulting therefrom.

Error to judgment of circuit court of city of Richmond, rendered February 28th, 1890, in an action of trespass on the case wherein the plaintiff in error, B. D. Chalkley (general partner of himself and Isaac Davenport, Jr., B. D. Davenport and J. A. Morris, special partners in the style of B. D. Chalkley) is plaintiff, and the city of Richmond is defendant.

*McGuire & Ellett*, for plaintiff in error.

*C. V. Meredith*, for defendant in error.

FAUNTLEROY, J., delivered the opinion of the court.

The pleadings and the proofs presented by the record disclose the following case :

The firm of B. D. Chalkley, manufacturers, importers, and dealers in leather and shoe findings, from the 20th day of August, 1885, to the 20th day of August, 1889, occupied, as their store, the storehouse No. 17 south Thirteenth street, situated on the east side of said street, between Main and Cary streets, with a cellar under it and several stories above. Under the sidewalk of the street, in front of the said cellar, about two and a half feet below the surface, and within about six inches of the wall of the said cellar, there runs a culvert three feet wide by two and one-half feet deep. The said culvert was, during the whole period from August the 20th, 1885, to August 20th, 1889, out of repair, and had been for many years prior, out of repair. It is without stone bottom, and the sides, walled with rough granite spalls from which the cement (if any was ever there) has been long since washed away, did not confine the water and filth flowing in said culvert. The said culvert is wholly under the public sidewalk. It is not shown *when* it was put there, or by whom, but that it was there as early as 1824 or 1820. As early as September 15th, 1834, the city of Richmond assumed control of the said culvert and, by a resolution of its common council of that date, reciting that " the large culvert which conveys filth from the Capitol Square, the Eagle Tavern, and divers other places, is now out of order, and will require considerable expense to keep the same in order, &c.," directed its commissioners of streets to have the said culvert (which was this culvert) repaired, and to draw on the city chamberlain (the city bursar) for the cost thereof. This control of the said sewer or culvert was further exercised by the city of Richmond when its street commissioners (members and appointees of the city council) " resolved, May 11th, 1835, that the repairs reported to be necessary to the culvert in Exchange alley (which is the extension of this culvert) be done "; and

when, in 1877, the city authorities gave formal record permission to A. Y. Stokes & Co., and appropriated $250 to aid them to remove and change the course of this said "water pipe"—or sewer—or culvert; and again, when, in 1887, the said city opened the said culvert and undertook to repair the same, and to remedy (though negligently and inadequately) the very evil for which this action was brought. In 1877 this culvert, or sewer, was changed in its course, on the petition of A. Y. Stokes & Co., by the formal consent of the city of Richmond, under the supervision of its engineer, and with the aid of its funds appropriated for that purpose; and whereas it ran, before it was so altered, by easy curves so that its contents flowed off easily, the new construction or alteration made a sharp angle in the said culvert, or sewer, whereby the flow of the filthy water and excrement was obstructed and backed and made to flood the cellar of the plaintiff. By reason of the aforesaid defects and want of repair of the said culvert, and the said alteration of its course, made by the consent and money-aid of the city of Richmond, under the supervision and direction of its city engineer, the water-closet water and excrement filth penetrated and leaked and flowed into the cellar of the plaintiff, and grew worse and worse from the time when notice was given to the city of Richmond, in 1885, down to the 20th of August, 1889. Every effort was made by the plaintiff and the owners of the property to have the said leak repaired and prevented by employing skilled workmen for that purpose, placing pipes under the floor to carry off the water, building a new wall on the inside of the original cellar wall, and by stopping the crevices, washed in the cellar wall by the said leaks, with pieces of brick driven in and cemented. These efforts were all unavailing, and the workmen refused to undertake further a useless job—leaving no remedy except the repair or reconstruction of the culvert. The effect of this influx of water and filth on the business of the plaintiff, and upon the health of himself, customers, and employees, was

disastrous in the extreme, and occasioned to him a money-damage of about $5,000. The whole storehouse was rendered damp and less useful for plaintiff's business, and he was deprived, for the most part, of the use of the cellar, which was the most useful and valuable room in the house, while the whole storehouse was filled with foul air and unwholesome stenches dangerous to health of plaintiff and his employees. The course of this culvert or sewer is from near the corner of Twelfth and Bank streets, under the Planters National Bank, and Anderson's and Block's stores, ·Nos. 1204 and 1210 east Main street, across Main street, under Putney & Watts, 1219 east Main street, across Thirteenth street in front of the plaintiff's storehouse, under the sidewalk, and down Lombard alley. It was proved to drain the Capitol, the governor's house, Planters National Bank, Anderson's and Block's stores, and all houses on the south side of Main street between Twelfth and Thirteenth streets, and the American Hotel and Adam's bakery. How many more it drains could not be shown, but a large stream of filth and water runs therein— " enough to turn a mill almost." The fountains on the eastern side of the Capitol Square also drain into this culvert, and the lower eastern fountain, near Bank street, particularly, was put there and drained into this culvert by the city of Richmond. All the water drained into this culvert, except such as is surface-flow, is *city water*—diverted from James river and brought into the city, and distributed by it through its water-works and pipes, and furnished to the water-takers for pay; and the state pays the city of Richmond for the water furnished the Capitol and the governor's house. The condition, produced by this defective and out-of-repair culvert, in the cellar and storehouse of plaintiff was and is a *nuisance*, and it was so reported to the health department of the city by its sanitary inspector, who says in his testimony: " Complaint was made to the board of health office. I was sent by Dr. Stratton·to see what the trouble was. I found water coming

in from the front wall of the house, apparently from the street. The cellar was in quite a bad condition, I thought, from the effect of the water, and not very pleasant to smell. I reported the case to the board of health with the idea of having it investigated, not believing at the time that Mr. Chalkley could help the nuisance being there, because he was complaining very bitterly of it. Our object was to get the nuisance abated as soon as possible as a sanitary measure." "Water percolated from the street through the front wall."

These facts are averred in plaintiff's declaration, and are all proved by the evidence in the record.

The court overruled the demurrer to the whole declaration and to the first and second counts, but sustained the demurrer as to the third count. Upon these facts, and an instruction given by the court, after refusing to give instructions asked for by the plaintiff, the jury found a verdict for the defendant city, which verdict the plaintiff moved the court to set aside as contrary to the law and the evidence, and to grant to him a new trial. But the court overruled the said motion and gave judgment against the plaintiff with costs, in accordance with the said verdict. The case is here by a writ of error to this judgment. The judgment of the circuit court is erroneous, both upon the law and the facts of the case.

The third count of the declaration sets out a good cause of action, and the demurrer to it should have been overruled. It does not charge or implicate the *ownership* of the culvert, nor the responsibility for it as it was and as it operated originally; it merely alleges its course and its sufficiency until interfered with by the city, to carry off all the water and filth flowing in it, without damage or annoyance to the store of plaintiff or its occupants, and its subsequent insufficiency to do this, by reason of the alteration in its course and shape made by the city, or under its direction, and the nuisance created and the damage done thereby. The truth of these allegations is admitted by the demurrer.

. The Code of Virginia, section 1038, gives every city in the state the power (and the correlative duty) to prevent injury or annoyance from anything dangerous, offensive or unhealthy, *and to cause any nuisance to be abated.* The charter of the city of Richmond gives it the same power and imposes the same duty. It has ample power to make and regulate its whole system of water-works, sewerage and drainage. It has full power over its streets and their sidewalks, which are parts of the street. Bishop's Non-Cont. Law, sec. 977; *City of Bloomington* v. *Bay,* 42 Ill. 503. It may build bridges in, and culverts under its streets, and may prevent or remove any structure, obstruction or encroachment over or under, or in a street or alley, or any sidewalk thereof. Its city engineer is the general superintendent of its streets, culverts and all public improvements, and it is his duty to report all encroachments, nuisances or obstructions thereon. For the execution of all these powers and duties the city has ample power of taxation and assessments.

"A city is liable for an injury to the plaintiff by flooding it with water, not only where such injury is caused by neglect to keep a sewer in repair, but as well where it is the negligent or necesssary result of the *constructing* of the sewer." Dillon M. Corp., sec. 1015. "The city is liable for a tort when it pours upon the premises of the citizen, a flood of water and filth, or either, by a public sewer so constructed (or altered) that the flood must be the necessary result." Chief-Justice Cooley in *Ashley* v. *Port Huron,* 35 Mich. 296 (Dillon, sec. 1045 note 2.): "A like excess of jurisdiction appears when, in the exercise of its powers a municipal corporation creates a nuisance to the injury of an individual." *Ashley* v. *Port Huron,* 35 Mich. 301.

"Courts of the highest respectability have held that if the sewer, whatever its *plan,* is *so constructed* as to cause a positive and direct invasion of plaintiff's private property, as by collecting and throwing upon it to his damage water which would

not otherwise have flowed or found its way there, the corpora-. tion is liable. This exception to the general doctrine, when properly limited and applied, seems to be founded on sound principles." Dillon M. Corp., sec. 1047. " The distinction is that the obligation to establish and open sewers is a *legislative* duty, while the obligation to keep them in repair is *ministerial*." Chief-Justice Cooley, in *Ashley* v. *Port Huron*, 35 Mich. 300. " Where the injury is occasioned by the *plan* of the improvement, as distinguished from the mode of carrying the plan into execution, there is not ordinarily, if ever, any liability. This, also, is everywhere admitted as generally true; but, in the case last supposed, there will be a liability if the direct effect of the work, particularly if it be a sewer or drain, is to collect an increased body of water, and to precipitate it on to the adjoining private property, to its injury." Dillon M. Corp., sec. 1051. " There is a municipal liability where the property of private persons is flooded, either directly or by water being set back, when this is the result of the negligent execution of the *plan* adopted for the construction of sewers, or the negligent failure to keep the same in repair and free from obstructions. The cases support this proposition with great unanimity." Dillon, *Idem*.

The city of Richmond cannot escape liability for the damage done to the rights of property, health, and comfort of the plaintiff, by the alteration made in the sewer by Stokes & Co., by permission of the city, under the supervision of its agents and by its money-aid. " A person contributing to a tort, whether his fellow-contributors are men, natural or other forces or things, is responsible for the whole the same as though he had done all without help." Bishop Non-Cont. Law, secs. 518, 525; Wood on Nuisances (2d Ed.), p. 896, note. Upon the facts alleged in the first and second counts of the declaration and established by the evidence, the city of Richmond is liable upon the ground of nuisance. That the culvert in question, in its then condition, and by the injury produced

by it, was a nuisance, is proved by the record; and it is as fully proved that the city had assumed and exercised control and absolute authority over it, and had ample power to repair it, or to remove obstruction in it. "Authority to preserve the health and safety of the inhabitants, as well as the authority to prevent and abate nuisances, is a sufficient foundation for ordinances to suppress and prohibit whatever is intrinsically and inevitably a nuisance." Dillon M. Corp., sec. 379.

"When a municipal corporation has ample power to remove a nuisance which is injurious to the health, endangers the safety, or impairs the convenience, of its citizens, it is liable for all the injuries that result from a failure on its part to properly exercise the power possessed by it." Wood on Nuis., sec. 749.

"A city authorized to abate nuisances is liable for failure to exercise the power." *Kiley* v. *Kansas*, 69 Mo. 102; *Parker* v. *Macon City*, 39 Ga. 729; *Noble* v. *City of Richmond*, 31 Gratt.; *Orme* v. *City of Richmond*, 79 Va.; *Saulsbury* v. *Village of Ithaca*, 94 N. Y.; *City of Joliet* v. *Vesley*, 35 Ill.; *City of Bloomington* v. *Bay*, 42 Ill.; *Clarke* v. *Town of Epsworth*, 56 Iowa; *Ashley* v. *Port Huron*, 35 Mich.; *Logansport* v. *Wright*, 25 Ind.; *Emory* v. *Lowell*, 104 Mass.; *Claybury* v. *City of Chicago*, 25 Ill.; *Springfield* v. *LeClair*, 49 Ill.; *Kranz* v. *City of Baltimore*, 64 Md.; *House* v. *Town of Fulton*, 34 Wis.

"A corporation has no more right to license or maintain a nuisance than an individual would have, and for a nuisance maintained on its property, the same liability attaches against a city, as to an individual." Dillon, secs. 374, 1048, note 2. "The King cannot license the erection or commission of a nuisance, nor can a municipal corporation do so." Dillon M. C., secs. 660, 1038, note 1.

The record does not show who built or first established the sewer, nor is that an essential inquiry in the case, the pivotal question being whether the city of Richmond had assumed and exercised control over it, and made practical use of it for the public? The proof is full and undeniable that the city assumed

and exercised control over it as early as 1834, and has repeatedly since emphasized that control by altering and repairing it, and by giving authority in her municipal capacity to others to do so, and appropriating money and furnishing labor, implements and official supervision and direction of the work. The plaintiff asked for instructions, based upon the case made by the evidence which properly expound the law, and which should have been given, but the court, refusing these, instructed the jury: "If the jury believe from the evidence that the culvert or sewer complained of was built by the state of Virginia, then they should find for the defendant." This instruction was erroneous, as it shut the jury up to the sole and immaterial inquiry, who, way back in the dim and remote past, may have originally built the sewer and withdrew from their consideration the most material and all-important fact established by the evidence in the case, that the city of Richmond had assumed and adopted the sewer for the use of her public, and had exercised unquestioned and continuous control over it as a subject of her municipal jurisdiction and administration. The judgment complained of is wholly erroneous, and is reversed and annulled, and the case will be remanded for a new trial, with directions to the circuit court to give the instructions asked for by the plaintiff if the evidence shall be the same, and for further proceeding in accordance to the views of this court.

LACY, J., *dissented.*

JUDGMENT REVERSED.