Statement.

## Richmond.

### TERRY *v.* CITY OF RICHMOND.

April 15, 1897.

Absent : KEITH, P.

1. MUNICIPAL CORPORATIONS— *Use of streets by railroads—Liability for results of defective tunnel.*—A city is not liable for damages resulting from the defective construction of a tunnel under one of its streets by a railroad company, when the railroad company is authorized to construct its road from said city, and the city permits the company to enter and use its streets for its roadway, in pursuance of authority vested in the city by its charter. The right of the city to allow the use of its streets by the railroad company includes the right to permit the company to run under the streets as well as upon them. But permission to enter and use the streets confers no right on the railroad company to take or invade the property of any citizen without just compensation, nor does it sanction any tort the company may commit. Nor does the taking of a bond from the company to indemnify the city against loss by reason of the failure of the company to carry out its contract with the city render the city liable for the torts of the company. The company alone is liable for its torts. It is in no sense the agent of the city.

Error to a judgment of the Law and Equity Court of the city of Richmond, rendered June 21, 1895, in an action of trespass wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The facts sufficiently appear in the opinion of the court.

The indemnifying bond referred to in the opinion was in the following words and figures:

"Know all men by these presents, that we, the Richmond and Chesapeake Railroad Company and Chas. E. Belvin, James A. Simmons, and Preston Belvin, are held and firmly bound unto the city of Richmond, in Virginia, in the just and full sum of one hundred thousand dollars to the payment whereof well and truly to be made to the said city of Richmond, we bind ourselves, our successors or assigns, and our heirs, executors and administrators, respectively, jointly and severally, firmly by these presents, sealed with our seals, and dated the 21st day of May, in the year 1888. Whereas the council of the said city by the fifteenth section of an ordinance approved May 5, 1888, and entitled an ordinance "to allow the Richmond and Chesapeake Railroad Company to construct a tunnel under Eighth street, and to lay certain tracks," did make the requirements set forth in the following words and figures, to wit:

"Sec. 15. Before the above named company shall have any right to exercise under this ordinance any of the privileges hereby granted it shall deposit with the treasurer of the city of Richmond a bond in the sum of one hundred thousand dollars, with good and sufficient sureties, satisfactory to the committee on streets, the said bond shall be drawn by the city attorney; and shall contain proper provisions for the purpose of securing or guaranteeing the payment or payments of any judgment or judgments that may be recovered in the Circuit Court of the city of Richmond against the above named company, by persons owning real estate, and which may be injured or damaged by reason of the construction or use of said tunnel, or by persons who may receive or suffer any injury to his person or personal property by reason of any negligence suffered or done by said company in the construction or use of said tunnel, and also for the purpose of securing or guaranteeing the payment or payments to the said city of any

amount or amounts that the city may expend by reason of any failure on the part of the above named company to perform to the satisfaction of the said committee each and every provision of this ordinance, the said bond shall be held by said city for one year after the first regular train of cars running over the line of the Richmond & Chesapeake Railroad Company from some point at or near the Chesapeake bay to Richmond, shall run through said tunnel, at the expiration of the said year the city treasurer shall cancel and turn over to the treasurer of the above named company the said bond provided that no suits for such injuries or damages shall then be pending in the Circuit Court, or the city be doing no work at the expense of said company, should there be any such suits pending in said court, or any such work being done by said city, the said city shall retain uncancelled said bond until the suit or suits then pending shall be ended, or the work or works then being done shall be paid for, and the bond thus retained shall be a security or guarantee for the payment or payments of any judgment or judgments recovered in said suits, and of any claim or claims of the city for the work or works when completed along with said bond shall also be filed an irrevocable power of attorney, signed by the makers of said bond giving the said treasurer full power to confess a judgment or judgments in the Circuit Court of Richmond, until the same shall aggregate the amount of the bond, whenever ordered by the chairman of the committee on streets to do so, under the authority given in this section.

"It shall be the duty of the said chairman, whenever any execution upon said judgment or any claim of said city arising under the ordinance and certified to the engineer of said city shall be presented to him, to notify the president, vicepresident, or general manager of said company, of the verdict of said judgment or claim; if any objection is made by said company within ten days of the receipt of said notification to

the payment of said judgment or claim, the said chairman shall take the advice of the city attorney upon the question as to whether the judgment or claim shall be paid and shall act in accordance with his opinion.

"If no objection be made by said company, or if any objection be made and the city attorney advise payment of the judgment or claim, then the said chairman shall order the said treasurer to exercise said power of attorney and to confess judgment in favor of the judgment creditor or in favor of the city in accordance with the opinion of the city attorney."

"And whereas it is the desire and intention of the said obligors to give by this writing the said required bond for the purpose of securing or guaranteeing the payment or payments of the judgment or judgments and the claim or claims alluded to in the said fifteenth section as the same may from time to time arise."

"And whereas it is the intent of the obligors herein to render themselves severally and jointly liable to the city of Richmond, for the claim or claims mentioned in said section and liable to the said city for the benefit of the creditor or creditors of the said company holding the judgment or judgments mentioned in said section whenever the said company shall fail to pay the said claim or claims, and the said judgment or judgments within the thirty days after the same may from time to time to be respectively presented to the said company for payment:

"Now, therefore, the condition of the above obligation is such that if the said company shall at all times pay the judgment or judgments, and the claim or claims alluded to in said section within thirty days after each judgment or claim respectively may be presented to said company, then this obligation is to be null and void, otherwise to remain in full force and effect, until the obligations herein shall have paid or shall have become by force of judgment upon this bond, liable for

the payment of the sum of one hundred thousand dollars upon the aggregate of said judgment and claims.

RICHMOND CHESAPEAKE RAILROAD CO., (Seal)
   By C. E. Belvin, President, under a resolution of said
   R. & C. R. R. Co., a copy of which is hereto attached.
                        C. E. BELVIN,        (Seal.)
                        JAMES A. SIMMONS,  (Seal.)
                        PRESTON BELVIN.   (Seal.)"

(Notarial acknowledgment.)

*Pollard & Sands*, for the plaintiff in error.

*C. V. Meredith*, for the defendant in error.

RIELY, J., delivered the opinion of the court.

The Richmond & Chesapeake Railroad Company, a corporation created by the General Assembly of Virginia, was authorized by its charter to construct and operate a railroad from the city of Richmond to a point on the Chesapeake bay, near the mouth of the Potomac river.

The council of the city, under the authority vested in it by the charter of the city, adopted an ordinance authorizing the railroad company to enter the city and use its streets for its roadway, and to build and construct a tunnel for a double railway track under Eighth street.

The company began the construction of the tunnel, and, after partly excavating it, ceased to work upon it. The tunnel, not being properly supported or arched, subsequently gave way in the centre of the street, and the superincumbent earth caved in. This caused the earth to recede from the front of plaintiff's lot, and greatly injured two tenement houses thereon belonging to her. The city, after the caving in of the tunnel, caused the excavation to be filled, and the street to be repaired.

This suit was brought by the owner of the property to re-

cover from the city the damages she has sustained. The question to be decided is whether or not the city is liable for the negligence or wrongful acts of the railroad company.

The railroad company being created and chartered by the sovereign power of the State, and authorized to construct and operate a railroad from the city of Richmond, and the council of the city being authorized by its charter to permit the railroad company to enter and use its streets for its roadway, the legality of the action of the council in granting such permission is beyond question, and no liability therefor can be maintained.

The right of the council to determine and designate the route and grade of any railroad to be laid in the city includes the authority to permit the railroad company to run under the street as well as upon it. The servitude is the same in each case. As was said in the case of the *City of Chicago* v. *Rumsey*, 87 Ill. 364, "there is no principle upon which the right to locate a railroad upon a street, as a legitimate use of the street, can be sanctioned which will not also sanction the construction of a tunnel in a street. The tunnel does not change the character of the street, or apply it to a new use."

The ordinance adopted by the council, in granting to the railroad company the right to occupy the streets of the city and construct the tunnel, shows that great care was taken by the requirement of proper safeguards to prevent the obstruction of or interference with the reasonable and legitimate use of the streets by the public.

The building of the railroad and the construction of the tunnel was solely the undertaking of the railroad company. It alone paid or was liable for all the expense of the work. Beyond prescribing the route and grade of the road, and making due provision for the safety of its streets and the preservation of its culverts, sewers, and water and gas pipes, and seeing that its requirements in respect to these matters were observed, the city exercised no control of the enterprise, nor

took nor had any part in it.   The improvement was not un-
dertaken for its profit, but was a private enterprise for pri-
vate profit.   The railroad company was in no sense the agent
of the city, but in constructing and operating the road it was
acting and would act for itself, and not for the city.

The permission granted to enter and use the streets of the
city for a roadway conferred no right whatever upon the rail-
road company to take or invade the property of any citizen
without just compensation, or sanctioned any tort it might
commit, any more than a license to a person to engage in
some legitimate private business requiring such license would
render it liable for a tort that such person might commit in
the pursuit of the business he was so licensed to carry on.

In Elliott on Roads and Streets, p. 522, the law on this
subject is thus stated: "In granting a right to occupy a street
by a railroad track, a municipal corporation exercises a dele-
gated governmental power, and for the bare exercise of such
a power is not liable to abutting owners.   It is evident that
the exercise of a governmental power cannot, of itself, sub-
ject the municipality to a private action, but if the municipal
corporation should join the railroad company in doing an act
which would so impair the easement of access, or so injure the
abutting property, as to cause the property owner special
damages, then, it may be that the owner could maintain his
action for damages.   Where, however, no more is done than
the enactment of an ordinance granting the privilege of occu-
pancy, it seems quite clear that no private action would lie
against the municipality for damages."

In *Dillenbach* v. *City of Xenia*, 41 Ohio St. 207, it was
held that where a city, under the authority given it by stat-
ute, granted to a railroad company the right to construct and
use its track in a street, the city was not liable to the owner
of a lot adjacent to the street for damages to his property re-
sulting from such use of the street by the railroad company.

In *Burkam* v. *O. & M. R. Co.*, 122 Ind. 344, Elliott, J.,

speaking for the court, said: "We have no doubt that an abutting owner has a proprietary right in the street, of which he cannot be deprived without compensation.   *   *   *   But it by no means follows from this that a city in granting a right to a railroad company to use a street deprives the abutter of his property.   The grant by the municipal corporation transfers no proprietary rights of the abutter, it simply grants the privilege the city has power to grant.   In granting such a privilege a city exercises a power delegated to it by the sovereign, and it is not liable for exercising such a power.   *   *   * Notwithstanding the grant by the municipality, the abutting owner has a right to recover such damage as he may have sustained by the additional burden imposed upon his land. *   *   *   But the right of the abutter to compensation is against the railroad company, and not against the city."   See also *Frith* v. *City of Dubuque,* 45 Iowa 406.

The bond of indemnity taken by the city of Richmond from the Richmond & Chesapeake Railroad Company did not operate to impose upon the city a liability which would not have otherwise existed, nor have the effect of making it responsible for any damage done by the Railroad Company where the law would not have made it liable in the absence of such bond.   The provisions of the bond show that the object of the city in requiring it was to protect itself against any loss it might be subjected to, or any expense it might have to incur, in consequence of the failure of the railroad company to comply with the requirements of the ordinance granting to it permission to construct the tunnel, and also to provide indemnity to any one who might sustain injury to his person or property by the negligence or wrongful acts of the railroad company in the construction or use of the tunnel, if he chose to avail himself of it.   Taking the bond did not increase the liability of the city.

A number of cases decided by this court, in which the municipality was held responsible, were cited and relied on to

support the claim of liability of the city in the case at bar, but they do not support the contention of the plaintiff in error. The liability in those cases rested upon a different ground from that which underlies this case.    Its solution depends upon the application of a different principle.    The act of the city, which is the subject of the complaint here, was the exercise of a delegated governmental power, but it will be found upon examination that the liability in each and all of the cases referred to was based either upon a tort committed by the city itself through its officers or agents, or upon the neglect of the city to perform some ministerial and absolute corporate duty; such as not giving warning of the dangerous condition of the entrance to its sidewalk from an established walking-way (*Orme and wife* v. *City of Richmond*, 79 Va. 86); or not keeping its sidewalk in a safe condition (*Noble and wife* v. *City of Richmond*, 31 Gratt. 280); or for failing, when elevating the grade of its street, to make provision for the escape of surface water and causing it to flow back upon an adjoining lot (*Smith* v. *City Council of Alexandria*, 33 Gratt. 208); or for neglecting to repair a sewer (*Chalkley* v. *City of Richmond*, 88 Va. 402); or for infringing, in lowering the grade of its street, upon the right of the owner of an adjoining lot to lateral support for his soil (*Stearns* v. *City of Richmond*, 88 Va. 992); or for allowing obstructions to be in the water adjacant to a wharf owned by the city, and for whose use it charged, or was entitled to charge, wharfage (*City of Petersburg* v. *Applegarth's Adm'r*, 28 Gratt. 321).    In no one of them was the question involved which is here presented.    In no one of them was the claims against the city for damages for a tort committed by an individual or a body corporate in the pursuit of his or its business, and for his or its own benefit and profit.

The duty of a municipal corporation to see that its streets and sidewalks are in a safe condition, and that its sewers and drains are kept in good order, and that its other like muni-

cipal obligations are cared for, is a purely ministerial and absolute corporate duty, assumed in consideration of the privileges conferred by its charter, and the law holds the municipality responsible for an injury resulting from the negligent discharge of such duty, or the negligent omission to discharge it, but exempts it from liability for the exercise of governmental or discretionary powers. *City of Richmond* v. *Long's Adm'r*, 17 Gratt. 375; *City of Petersburg* v. *Applegarth's Adm'r*, 28 Gratt. 343; *Mills et al* v. *City of Brooklyn*, 32 N. Y. 489, 497; *Hill* v. *City of Boston*, 122 Mass. 344; Elliott on Roads and Streets, p. 504 and 532; 2 Dillon on Mun. Corp., secs. 1046-9; Tiedeman on Mun. Corp., sec. 349; and Cooley on Torts (2nd Ed.), p. 738 to 743.

The city of Richmond in licensing the Richmond & Chesapeake Railroad Company, a corporation created and chartered by the sovereign power of the State, to enter and use its streets for its roadway, and to construct a tunnel to that end, having the power under its charter to grant such permission, exercised a public or governmental power, and the law exempts it from responsibility for an injury resulting from the negligence or wrongful act of the railroad company, unless such injury was also due to the failure of the city to discharge some ministerial and obligatory duty.

The court below, therefore, committed no error in refusing to give the instruction asked for by the plaintiff, and in giving that asked for by the defendant; nor in refusing to set aside the verdict and award the plaintiff a new trial; and its judgment must be affirmed.

*Affirmed.*