## No. 9023.

### LUXFORD v. CITY AND COUNTY OF DENVER.

MUNICIPAL CORPORATIONS—*Railroad Grade in Street—Liability for Injury to Private Property.* A city is not liable for an injury to private property occasioned by a railway grade authorized by the city in a public street, even though attributable to the omission by the company to provide means of drainage as stipulated for in the ordinance authorizing such grade.

*Error to Denver District Court, Hon. Charles C. Butler, Judge.*

Mr. HALSTEAD L. RITTER, for plaintiff in error.

Mr. JAMES A. MARSH, Mr. JACOB J. LIEBERMAN, for defendant in error.

Mr. Justice Bailey delivered the opinion of the court.

THIS action was brought to recover damages caused by the Cherry Creek flood of July, 1912. The trial court sustained

a general demurrer to the complaint. Plaintiff having elected to stand by his cause as therein made, a judgment of dismissal was entered, and he brings the cause on error for review.

The essential facts, which upon demurrer must be taken as true, are as follows: In 1887 The Burlington & Colorado Railroad Company obtained a franchise to construct and operate a railroad across Corbett Street, a regularly established highway in the City of Denver. An embankment approximately five feet high was erected across the end of the street, and the rails laid thereon. No culverts or other means of drainage were provided in the embankment, although by the terms of the franchise they were especially stipulated. The Chicago, Burlington & Quincy Railroad Company is the successor to the original corporation.

On July 14, 1912, an extraordinary and unusual rainfall occurred in and around Denver and along Cherry Creek, causing that stream to overflow its banks and run into and down Corbett Street toward the Platte River. This flow was checked at the embankment in question, causing the water to back up into the basement of a warehouse owned by The Benedict Warehouse & Transfer Company, injuring a quantity of goods stored there. The claims of the several owners were duly assigned to plaintiff.

The cause of action is predicated upon the theory that the embankment was a nuisance, an inherently dangerous thing, and to the construction of which the city had neither the right nor authority to consent. That it was the duty of the city to abate such nuisance, and that its continued existence was a concurrent cause with the flood in producing the damage of which complaint is made.

Both upon principle and authority, the railroad grade across Corbett Street was not a nuisance *per se*. It was not an agency inherently dangerous. The right of the railroad company to use the street having, as is conceded, been lawfully granted, such use certainly, in and of itself alone, can

not constitute a nuisance. The embankment had been in existence for more than thirty years prior to July, 1912, and, so far as the record shows, no claim had ever been made that it constituted a nuisance or was in any way a menace to personal or property rights. It is well settled that the authorized use and occupancy of city streets by a railroad company does not necessarily constitute a nuisance. *State v. Louisville, etc., Railroad Company*, 86 Ind. 114; *Danville, etc., Railroad Company*, 73 Pa. St. 29. The rule is stated in *Denver, etc., Railroad Company v. Hannegan*, 43 Colo. 123, at page 126, 95 Pac. 344, as follows:

"The city authorities could authorize occupancy and use thereof (the streets) for railway purposes, although it is a servitude not strictly within the ordinary uses of a public street. And the effect of the grant to The Denver Circle Railway Company by the ordinance of January 28, 1881, was to render legal such occupancy and use and avoid any claim by the city for damages through resulting inconvenience to the general public. Moreover, so long as the grantee or its successors limited such occupancy and use to proper and legitimate railway purposes, conducting the same in accordance with the provisions of the ordinance, no action could be maintained by any one upon the ground that such occupancy and use constituted a nuisance."

There is no allegation in the complaint that the use of the street has not been limited to proper and legitimate railway purposes, or that such use constituted a nuisance although, as already noted, it has been so used for upwards of thirty years.

The granting of a right by a municipality to a railroad company to occupy streets creates no liability in favor of third persons against the municipality for the damages occasioned by the corporation because of the bare exercise of the right so granted. As was said in *Green v. Portland*, 32 Me. 431, at page 433:

"The railway was not built with the funds of the city or by its order, or by its officers. The city has received no

rent, income or benefit from it. It has no other connection with it, than to grant the owners of it a license to build and continue it on its streets. It might well take the bond of indemnity to protect it from damages, for which would be liable by statute for direct injuries there occasioned to the persons or property of individuals. The fact that the city took such bond does not increase its liability, or make it responsible to those who in some other manner have suffered damages from it. It does not even impliedly authorize them to do any damage to others.

"The license amounts to nothing more than an authority, so far as the city is concerned, to do the acts for their own benefit and upon their own responsibility, without being submitted to interruption or complaint by the city. If one person license another to pass over his land without compensation, for his own convenience or benefit, he does not thereby constitute him his agent for that purpose. Nor would he thereby become liable to third parties for injuries suffered by them in consequence of the acts done under such license. * * * If it had the power to grant such a license, it must have derived it from its general powers to regulate its own corporate rights and interests. And those powers would not authorize it to make itself responsible for the acts of others from which neither it, nor its citizens, derive any benefit, and which were not done for the accommodation of the public travel and business. Upon the case as presented, the city does not appear to be responsible for any damages which the plaintiffs may have suffered."

In Elliott on Streets and Roads, 3rd ed., vol. 2, sec. 890, page 522, it is said:

"In granting a right to occupy a street by a railroad track, a municipal corporation exercises a delegated governmental power, and for the bare exercise of such a power is not liable to abutting owners. It is evident that the exercise of a governmental power can not, of itself, subject the municipality to private action, but if the municipal

corporation should join the railroad company in doing an act which would so impair the easement of access, or so injure the abutting property as to cause the property owner special damages, then it may be that the owner could maintain his action for damages. Where, however, no more is done than the enactment of an ordinance granting the privilege of occupancy, it seems quite clear that no private action would lie against the municipality for damages."

The principle announced in the authorities above quoted is approved and applied in the following cases: *Burkham v. Ohio & Miss. Ry. Co.*, 122 Ind. 344, 23 N. E. 799; *Frith v. City of Dubuque and C., D. & M. R. Co.*, 45 Iowa 406; *Terry v. Richmond*, 94 Va. 537, 27 S. E. 429, 38 L. R. A. 834; *Dillenbach v. City of Xenia*, 41 Ohio St. 207; *Tatman v. City of Benton Harbor*, 115 Mich. 695, 74 N. W. 187; *Jordan v. City of Benwood*, 42 W. Va. 312, 26 S. E. 266, 36 L. R. A. 519, 57 Am. St. Rep. 859; *Laager v. City of San Antonio*, (Tex. Civ. App.) 57 S. W. 61; *Murphy v. Chicago*, 29 Ill. 279, 81 Am. Dec. 307; *Murphy et al. v. C., R. I. & P. Ry. Co.*, 247 Ill. 614, 93 N. E. 381. The basic question involved has been frequently before this court and, in principle, has been determined in harmony with the decisions cited.

In *City of Denver v. Bayer*, 7 Colo. 133, 2 Pac. 6, this court discussed the liability of a municipality for damages to abutting property owners by construction of a railroad upon the public streets. The road had been built under an ordinance identical with the one under which the track here involved was constructed. In its opinion on the questions involved the court, on page 126, said:

"If the city council determine to make some change in the street for the benefit of the public, and proceed to do the work, the contractors or employees would be the city's agents; for injuries arising from their unskilfulness or negligence, the municipality would unquestionably be liable. But the construction of the ordinary railroad is not, as we have found, an improvement of the street for the conveni-

ence and benefit of the local public; it is a private enterprise, for private profit. True, the city attaches certain conditions to the license granted, such as that the roadbed shall be upon a certain grade, that culverts shall be constructed for the gutters, and planks laid at the crossings. But otherwise the municipal authorities do not control the enterprise. Whether we term the railroad company purely a private, or whether we call it a *quasi* public corporation, the situation remains, unchanged. In constructing and operating the road, it is acting for itself and not for the city. * * * If the railroad company disobeys the law in building or operating its road, the city is no more responsible therefor than it would be for a tort of the private individual in the pursuit of his business aforesaid."

So, also, in *Sorenson v. Town of Greeley,* 10 Colo. 369, 75 Pac. 803, where a railroad company, in constructing its tracks under grant from the municipality, destroyed a flume belonging to plaintiff, this court, citing *Denver v. Bayer,* said:

"In no view of the case can the town be held liable for the injury resulting from such disturbance of the flume and lateral of the plaintiff. The granting of a right of way on a street for a railway by a municipality does not create a liability against the municipality for the damages occasioned by the corporation exercising the rights so granted. The liability in such cases is against the corporation exercising and enjoying such rights."

The rule is approved in *Town of Idaho Springs v. Woodward,* 10 Colo. 104, 14 Pac. 49, and *Town of Idaho Springs v. Filteau,* 10 Colo. 105, 14 Pac. 48.

The latest pronouncement of this court on the question is in *City of Colorado Springs v. Stark,* 57 Colo. 384, 140 Pac. 794, 796. On page 388 the court distinguishes the cases cited above from the one then at bar, as follows:

"These decisions are based upon the broad and equitable principle that those who reap the benefits of improvements must bear the burden of compensation for any loss occa-

sioned in securing them. They depend upon the proposition that where the use innures primarily to the profit and advantage of individuals, or to private or *quasi* public corporations, just compensation for injury thereby occasioned must be made to the abutting property owner by those so benefitted."

The grade in question was constructed exclusively for the profit, benefit and advantage of the railway company, and not for the benefit of the public. The case is therefore ruled by our own decisions and the liability to the plaintiff, if any, is that of the railroad alone, which can not by any legitimate reasoning be properly saddled upon the city.

*Denver v. Aaron,* 6 Colo. App. 232, 40 Pac. 587, relied upon by plaintiff, is based upon the failure of the municipality to perform its affirmative duty to keep its streets in a reasonably safe condition for travel. That question is not even remotely involved in this controversy and that decision has no application here, as the case is not analagous, either in facts or principles of law, to this one. If this were an action wherein damages were sought because of the injury resulting from the obstruction of a street through the failure of the city to keep the same in a reasonably safe condition for travel, a different question would be for consideration. Cases of that sort present questions of the failure of the municipality to perform some specific, affirmative duty placed upon it by law, and that decision states no principle applicable to or controlling upon the facts of this case.

The judgment of the trial court is right, and should be, and is, accordingly affirmed.

Judgment affirmed.

Mr. Chief Justice Hill and Mr. Justice Allen concur.