# Staunton

## BEULAH FRANKLIN v. TOWN OF RICHLANDS.

September 21, 1933.

Present, Campbell, C. J., and Holt, Epes, Gregory and Browning, JJ.

The opinion states the case.

*J. Powell Royall* and *S. M. B. Coulling,* for the plaintiff in error.

*R. O. Crockett,* for the defendant in error.

Holt, J., delivered the opinion of the court.

On December 13, 1931, about 11 o'clock at night, Beulah Franklin, a girl under age, together with Willis Cruey, an adult male companion, was arrested by the officers of the town of Richlands, a municipal corporation. They were confined in the local jail or lock-up and were there detained until about 3 o'clock in the afternoon of the following day. This jail is a one-room structure, filthy, unfit for human habitation and without separate sanitary conveniences for men and women. At least such were the allegations in the motion for judgment. It is not necessary to enter into the details. Plaintiff claims to have been more or less permanently injured, and it suffices to

say that her motion sets up grounds amply adequate to sustain a recovery, if any recovery can be had at all.

To the notice of motion the town demurred, and as ground therefor said that the maintenance of this jail was a governmental function for the improper exercise of which it was not liable.

If the maintenance of jails is a purely governmental function, a municipal corporation is not liable for negligence in their administration.

"In providing a prison and keeping it in repair, and furnishing supplies for its inmates, it (a municipality) exercises discretionary governmental functions and is therefore not answerable to one who is injured in health or otherwise by the condition of the prison or the failure to furnish proper supplies to the persons confined therein." Note 30 Am. St. Rep. p. 402.

"Municipal corporations are almost always authorized or required to maintain a place for the confinement of persons charged with crime and those convicted of the minor offenses; but the maintenance of such a place of confinement is a purely governmental function, a part of the public duty to suppress disorder and crime, and it is well settled that a municipality incurs no more liability for negligence in connection therewith than in the case of its other governmental duties. Thus a municipality is not liable for the injurious results of confining a person in an insufficiently heated or otherwise unsanitary jail, prison, workhouse, lock-up or calaboose, or for the negligence of the persons in charge of the jail in allowing it to be burned, thus causing the death of a prisoner, or for personal injuries arising out of the work at which the inmate of a prison is put, or from the assaults of other prisoners, even if the public authorities should have known of the danger. In such cases it can make no difference that the injured person was confined in prison for violation of a city ordinance." 19 R. C. L., section 404, p. 1125; 6 McQuillin on Municipal Corporations (2d Ed.) section 2591; 43 Corpus Juris, p. 1168.

██ "It may also be asserted, with reasonable assurance of verity, that the courts generally hold that a municipality is not liable for damages to an individual who is injured by the negligence of a servant, officer, or employee of the municipality while he is engaged in the performance of a governmental function." *District of Columbia* v. *Totten,* 55 App. D. C. 312, 5 F. (2d) 374, 376, 40 A. L. R. 1461; *Gray* v. *Mayor, etc., of Griffin,* 111 Ga. 361, 36 S. E. 792, 794, 51 L. R. A. 131; *LaClef* v. *Concordia,* 41 Kan. 323, 21 Pac. 272, 273, 13 Am. St. Rep. 285; *Shaw* v. *City of Charleston,* 57 W. Va. 433, 50 S. E. 527, 528, 4 Ann. Cas. 515; *Ulrich* v. *St. Louis,* 112 Mo. 138, 20 S. W. 466, 34 Am. St. Rep. 372; *Lahner* v. *Town of Williams,* 112 Iowa 428, 84 N. W. 507; *Mains* v. *Fort Fairfield,* 99 Me. 177, 59 Atl. 87; *Gullikson* v. *McDonald,* 62 Minn. 278, 64 N. W. 812; *Wilcox* v. *Rochester,* 190 N. Y. 137, 82 N. E. 1119, 17 L. R. A. (N. S.) 741, 13 Ann. Cas. 759. Unnumbered other cases to the same effect might be cited but it is not necessary. Where purely governmental functions are exercised, the city stands in the place of and acts for·the State itself and not in a private corporate capacity.

The situation in North Carolina is somewhat different. The general rule as to non-liability is approved, but it is there held that a city, under the statute, must construct a proper prison and make adequate provisions for the reasonable comfort of prisoners. For failure to so provide it is liable, but it is further said that when such requirements have been met the city is not liable because the fires are not lighted or bed-clothes not furnished. *Moffitt* v. *Asheville,* 103 N. C. 237, 9 S. E. 695, 14 Am. St. Rep. 810.

Plaintiff relies strongly upon *Edwards* v. *Town of Pocahontas* (C. C.) 47 Fed. 268. There, as here, the plaintiff charged that he was confined by the town to a filthy lockup, suffered and was sick. A demurrer to the declaration was overruled by the Federal court. That court conceded that there was no precedent for its finding. In support of its judgment attention was called to the fact that county

jails are under statutory supervision and are to be kept
in a sanitary condition. To them all county prisoners
may be sent. Towns are given permission to establish
local jails or lock-ups, but are not obliged to do so, and
for their general supervision there is no statutory guide.
It was therefore said that the town which was not obliged
to establish a jail did so at its peril and was liable for its
negligent conduct.

█ It is still true that while towns are authorized to
build jails they are not obliged to do so (Code, section
3030), but may use the county jail (Code, section 2856),
and it is also true that no provision is made under gen-
eral law for their supervision, but it can hardly be argued
that where no care is demanded by statute some addi-
tional burden is assumed. It is a substitute for no com-
mon-law requirements. These local lock-ups in towns
far removed from county seats are sometimes extremely
convenient—we might say necessary—as places of tem-
porary detention until transportation to county jails can
be had. Authority is conferred by the State and the im-
munities which follow are not limited by the fact that
the right to build is permissive and not mandatory.

In *Tindley* v. *City of Salem*, 137 Mass. 171, 50 Am. Rep.
289, the court said:

"There are many provisions of statute, by which all
municipal corporations must do certain things, and may
do certain other things, in each instance with a view
solely to the general good. In looking at these provisions
in detail, it is impossible to suppose that the legislature
have intended to make this distinction a material one in
determining the question of corporate liability to private
actions. For example, towns must maintain pounds,
guideposts and burial grounds; and may establish and
maintain hospitals, work-houses or alms-houses, town
halls, libraries, monuments in memory of soldiers, public
baths, quarantine grounds, and watch and ward; and
may raise money for the destruction of noxious animals,
for centennial celebrations, for shade trees, for the detec-

tion and apprehension of felons, and for building armories. * * Each town containing more than three thousand inhabitants must, and every town may, keep and maintain a lock-up. * * *

"In all of these cases the duty is imposed or the authority conferred for the general benefit. The motive and the object are the same, though in some instances the legislature determines finally the necessity or expediency, and in others it leaves the necessity or expediency to be determined by the towns themselves. But when determined, and when the service has been entered upon, there is no good reason why a liability to a private action should be imposed when a town voluntarily enters upon such a beneficial work, and withheld when it performs the service under the requirements of an imperative law. To make such a distinction would not have the effect to encourage towns in making liberal provision for the public good."

In *City of Lynchburg* v. *Peters,* 145 Va. 1, 133 S. E. 674, Judge Chichester held that the city by virtue of Code, section 3030, and of a charter provision, had power in certain circumstances to close its streets and establish a public playground, and that in so doing it acted in a purely governmental capacity. There was in that case no express statutory mandate. The power was permissive only.

In other words, the touchstone is the nature of the power and the source from which it comes.

Richlands is one of the political subdivisions of the State, and as such was of the opinion that the building of this jail was a public necessity. Plainly it was done for no private corporate purposes. See, also, *City of Lynchburg* v. *Peters,* 156 Va. 40, 157 S. E. 769.

"This seems to be the current of authority everywhere, that a city, while acting as a political part of the State in suppressing crime and immorality, in the preservation of peace and good order, is not liable for its acts, although negligently committed by the city or its agents." *LaClef* v. *City of Concordia, supra.*

*Edwards* v. *Town of Pocahontas, supra,* was considered and criticized in *Shaw* v. *City of Charleston, supra,* when it was said: "How a difference in the method by which the two classes of corporations obtain the legislative power vested in them can change the character of that power, and impose liability for its negligent exercise, when the legislature has not expressly provided for such liability, is not apparent on the face of the proposition, and the reasons assigned in the few isolated cases asserting the doctrine are wholly unsatisfactory."

In *Gray* v. *Mayor, etc., of Griffin, supra,* the *Edwards Case* again came under consideration. The court said: "In view of the decisions of this court in reference to the non-liability of a municipal corporation when exercising governmental functions, and the overwhelming weight of outside authority in cases similar to the one we have under consideration, we are constrained to hold that the defendant is not liable to the plaintiff for any injuries which he may have sustained while confined in the city guard house, by reason of its improper construction and unwholesome condition, or by reason of the failure of the municipal authorities to provide the means by which he could have protected himself from the inclemency of the weather during his imprisonment."

In harmony with the law generally we have held that there is no liability for the negligent performance of purely governmental matters. *Richmond* v. *Warehouse Corporation,* 148 Va. 60, 138 S. E. 503.

*Maia* v. *Eastern State Hospital,* 97 Va. 507, 34 S. E. 617, 618, 47 L. R. A. 577, is persuasive authority. It there appears that a patient of the hospital was required to make a dangerous excavation and was injured in the performance of this work assigned. The court cited with approval *City of Richmond* v. *Long,* 17 Gratt. (58 Va.) 375, 94 Am. Dec. 461, and said: "In that case the distinction was drawn between powers and duties which are granted to or imposed upon a public body as an agency of the government to be exercised and performed exclusively

for public, governmental purposes, and those powers and privileges which are exercised by the corporation or body for its own private advantage, and are for public purposes in no other sense than that the public derives a common benefit from a proper discharge of the duties arising from the grant.

"For the negligent exercise or performance of the former class of powers and duties it was held that the city was not liable, and as the injury complained of belonged to that class, it was held that the action would not lie, whilst it was admitted that if the injury had resulted from negligence in the exercise or performance of the latter class of powers and duties, the city would have been liable in the same manner as an individual or private corporation. The doctrine enunciated in that case was recognized, and the case cited with approval, in *DeVoss* v. *City of Richmond*, 18 Gratt. (59 Va.) 344 [98 Am. Dec. 646]; *City of Petersburg* v. *Applegarth's Adm'r*, 28 Gratt. [69 Va.] 343-4 [26 Am. Rep. 357]; *Noble, etc.* v. *City of Richmond*, 31 Gratt. [72 Va.] 278, [31 Am. Rep. 726]; *Orme* v. *City of Richmond*, 79 Va. 89; and in the very recent case of *Terry* v. *City of Richmond*, 94 Va. 537, 544-5, 27 S. E. 429 [38 L. R. A. 834], the distinction was again recognized and acted upon."

Since the hospital acted in a public capacity it was held not liable.

In the instant case the defendant likewise undertook the maintenance of a jail in the interest of the public generally. It was given legislative authority to maintain and use this jail unhampered by statutory regulations.

We have purposely refrained from any discussion of the liability of officials who may improperly discharge official duties.

A demurrer to the motion for judgment was properly sustained.

There is no error in the judgment appealed from and it is affirmed.

*Affirmed.*