## Richmond.

MAIA'S ADM'R v. EASTERN STATE HOSPITAL.

NOVEMBER 16, 1899.

1. EASTERN STATE HOSPITAL—*Public Corporations—Personal Injury— Negligence of Managers and Servants.*—The Eastern State Hospital is a public corporation, governed and controlled by the State, and acts exclusively as an agency of the State for the protection of society and the promotion of the best interests of a class of unfortunate citizens. Although, under the terms of its charter, it may sue and be sued, regard must be had to the objects for which it was established in order to determine its liability. It is not liable in damages for a personal injury inflicted on one of its inmates in consequence of the negligence or misconduct of the persons administering the powers of the corporation, or their agents or employees. *Eastern Lunatic Asylum* v. *Garrett*, 27 Gratt. 163, distinguished.

Error to a judgment of the Circuit Court of the city of Richmond, rendered December 7, 1897, in an action of trespass on the case wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The opinion states the case.

*Samuel D. Davies* and *R. E. Frayser,* for the plaintiff in error.

*Attorney-General A. J. Montague* and *Wm. R. Aylett,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This cause was heard at a former term of the court, and an

opinion and judgment rendered reversing the judgment com-
plained of. Upon a petition to rehear, that judgment was set
aside, and at this term of the court the cause was again argued
and submitted.

The plaintiff in error, who was the plaintiff in the court below,
brought an action of trespass on the case to recover damages for
the death of his intestate alleged to have been caused by the
negligence of the defendant, or its agents, in requiring and per-
mitting the intestate, whilst a patient and inmate of the defend-
ant's hospital for the insane, to dig and excavate in the side of
an embankment, the property of the defendant, without pro-
viding props or supports to prevent the overhanging earth from
falling upon him.

The defendant demurred to the declaration, and to each count
thereof, upon the ground that it was a public corporation—an
agency of the State for the exercise of purely governmental
functions—and that no action would lie against it for the injury
complained of.

The first question to be considered is the character of the de-
fendant corporation. Is the defendant a public corporation—an
agency of the State exercising exclusively governmental func-
tions?

By an act of the House of Burgesses, passed in the year 1769,
after a preamble reciting that persons of insane or disordered
minds had been frequently found wandering in different parts
of the colony, and no certain provision has been yet made either
towards effecting a cure of those whose cases are not become
quite desperate, nor for restraining others who might be dan-
gerous to society, fifteen persons, among them John Blair, Peyton
Randolph, and George Wythe, were " constituted trustees for
founding and establishing a *public hospital* for the reception
of such persons as, from time to time, according to the rules and
orders established by this act, may be sent thereto. And the
said trustees shall be called and known by the name and style

of the court of directors of the public hospital for persons of insane or disordered minds." 8 Hennings Statutes, p. 378.

By an act of the General Assembly, passed in 1785, the directors of the public hospital which had been organized and conducted under the act of 1769 and amendments thereto, was created a corporation (12 Hen. Statutes, 198), and has ever since existed as a corporation under various names, and is now known as " The Eastern State Hospital." See Code of 1819, ch. 109; Code of 1849, ch. 85; Code of 1887, ch. 75; Acts of 1893-4, p. 397.

An examination of the statutes creating and continuing this hospital shows that it was created and exists for purely governmental purposes, and is under the exclusive ownership and control of the State. It has no stockholders, no members even, except directors, having no interest in it or its affairs, who are appointed by the Governor, by and with the consent of the Senate, and are in fact public, rather than corporate, officials, endowed with a corporate being for a more convenient administration of the duties imposed upon them by law, and are made liable to fines for any failure to perform their duties.

The money necessary to defray the expenses of maintaining and caring for its inmates is provided by annual appropriations made by the General Assembly out of the public treasury, and the manner of keeping and disbursing its funds is prescribed by statute. The directors are required to make quarterly reports to the Auditor of Public Accounts, showing in detail how they have disbursed the funds, and to report annually to the Governor, for the information of the General Assembly, the condition of the hospital, and the sums received and disbursed by them.

It is plain under the authorities, and especially under the recent case of *Phillips* v. *University of Virginia, ante* p. 472, that the defendant is a public corporation, governed and controlled by the State, and acts exclusively as an agency of the State, for the protection of society and for the promotion of the best

interests of the unfortunate people of the Commonwealth of insane or disordered minds.

The next question is whether the defendant, a public corporation—an agency of the State exercising exclusively governmental functions—is liable for the injuries complained of in the declaration.

In the case of *City of Richmond* v. *Long,* 17 Gratt. 375, the liability of a municipal corporation for the negligence of its agents when in the exercise and performance of governmental powers and duties was considered. That was an action to recover damages for the loss of a slave who, it was alleged, had lost his life by reason of the careless and negligent conduct of the agents of the city in permitting him to escape, whilst insane, from the small-pox hospital of the city, into which he had been admitted for treatment in pursuance of the ordinance of the city. In that case the distinction was drawn between powers and duties which are granted to or imposed upon a public body as an agency of government to be exercised and performed exclusively for public, governmental purposes, and those powers and privileges which are exercised by the corporation or body for its own private advantage, and are for public purposes in no other sense than that the public derives a common benefit from a proper discharge of the duties arising from the grant.

For the negligent exercise or performance of the former class of powers and duties it was held that the city was not liable, and as the injury complained of belonged to that class, it was held that the action would not lie, whilst it was admitted that if the injury had resulted from negligence in the exercise or performance of the latter class of powers and duties, the city would have been liable in the same manner as an individual or private corporation. The doctrine enunciated in that case was recognized, and the case cited with approval, in *De Voss* v. *City of Richmond,* 18 Gratt. 344; *City of Petersburg* v. *Applegarth's Adm'r,* 28 Gratt. 343-4; *Noble, &c.* v. *City of Richmond,* 31

Gratt. 278; *Orme* v. *City of Richmond*, 79 Va. 89; and in the very recent case of *Terry* v. *City of Richmond*, 94 Va. 537, 544-5, the distinction was again recognized and acted upon.

If a municipal corporation which has a two-fold character, one public and the other private, is exempt from liability for the negligence of its agents when in the exercise and performance of its powers and duties as an agency of the government, a public corporation which was created and exists for no other than governmental purposes must necessarily be exempt from such liability. Otherwise there would be this anomaly, that for such negligence a corporation created partly for governmental purposes would be exempt from liability, whilst one created wholly for such purposes would not be, when the reason for such exemption is solely because it was in the exercise of governmental functions when the negligence occurred. But we are not left to determine this question upon reason merely. We have authority upon the subject.

In the case of *Sayre* v. *Northwest Turnpike Road Co.*, 10 Leigh 454, which was an action of trespass on the case to recover damages for the washing away of the plaintiff's saw and grist mills and mill-dam, caused by the alleged negligent planning and construction of a bridge by the defendant corporation over the stream upon which they were built, it was held that the action would not lie because the defendant corporation was composed, in the language of President Tucker, who delivered the unanimous opinion of the court, exclusively of officers of the government, having no personal interest in it, or in its concerns, and only acting as the organ of the Commonwealth in effecting a great public improvement.

This conclusion is fully sustained, we think, by the weight of authority. See *Nugent* v. *Commissioners*, 58 Miss. 197; *Hughes* v. *County of Monroe*, 147 N. Y. 49 (39 L. R. A. 33); *De Vere Ford* v. *School District* (Pa.), 1 L. R. A. 607; *Jordan* v. *Iowa State Ass. Soc.*, 24 L. R. A. 655; Cooley on Torts (2

Ed.), p. 738 to 743; 1 Shear. & Red. on Neg. (5 Ed.), secs. 260a, 295, and 319.

It is insisted by the plaintiff's counsel that the defendant is made a corporation by the express language of the Code (sec. 1661), and as there is no qualification or restriction respecting its character as a corporation, it must be deemed in all respects a corporation under the general law with the liability to be sued in like manner as any other corporation; that this was expressly so held in the case of the same corporation (under its then corporate name of *Eastern Lunatic Asylum*) in *Eastern Lunatic Asylum* v. *Garrett,* 27 Gratt. 163, 174, and that that decision is conclusive of the plaintiff's right to maintain this action.

It is true that it is expressly provided by the section of the Code cited that the defendant may sue and be sued; that this court did sustain an action of trover against it; and that Judge Staples, in delivering the opinion of the court, did say that " the asylum is a corporation, and, as such, may be sued in trespass or trover "; but it does not necessarily follow that because the act incorporating a public corporation provides that it may be sued, and that this court has held that an action of tort would lie against it, that it can be sued in all cases of tort in which a private corporation may be sued. If that contention were true, a municipal corporation whose charter provided that it might sue and be sued would be liable in all cases of tort like a private corporation, yet, notwithstanding such provision in its charter, we know that an action will not lie against it for the negligence of its officers or agents when exercising its governmental functions. By the terms of most, if not all, acts of incorporation, whether for public or private purposes, it is provided that they may sue and be sued. The reason for such legislation and the construction such language should receive is considered and commented on by Judge Allen in *Dunnington* v. *Northwest Turnpike Road,* 6 Gratt. 160, 170. In that case, as in the Garrett case,

the point was made that the action would not lie against the
defendant because it was a public corporation, acting as an agency
of the State.    That was an action of *assumpsit* for work and
labor done, and materials furnished, and the court held that
the action would lie, and in distinguishing that case from the
case of *Sayre* v. *Northwest Turnpike Road Co., supra*, Judge
Allen said: " The question really is not whether any action will
lie against this company, but whether, having regard to the
objects of the corporation, the action will lie for the particular
grievance complained of.   It was not decided in the case of
*Sayre* v. *N. W. Turnpike Road*, 10 Leigh, 454, that no action
will lie against this corporation; all that the case decided was that
the action would not lie against this company for the injury
there complained of."    Applying the principle laid down in that
case, that in order to determine whether an action will lie against
a public corporation like this for the grievance complained of,
*regard must be had to the objects for which the corporation was
created*, there is no difficulty in reaching the conclusion that the
decision in the Garrett case is not in conflict with the Sayre
case, and that the court did not intend to overrule it by an
opinion which makes no reference to it, and does not discuss or
even refer to it, or the questions involved in it.

That was a wholly different case from this.    There is no simi-
larity between the two, except both were actions of tort.

During the civil war the military forces of the United States
took possession of Williamsburg, where the defendant asylum
was and is located, and held it until the end of the war.    Upon
their approach to the city the authorities in charge of the asylum
left it, and did not return.    In January, 1865, the Federal officer
who was in command there sent out a party some miles into the
country and took by force from the farm of the plaintiff, who
had left his home, corn and bacon, which was sent to the asylum,
and used for the support of the inmates.    After the war the
plaintiff brought an action of trover against the asylum to recover

the value of the articles taken and used.   It was held in that case, first, that by the laws of war property could not be taken without compensation for the purpose of feeding the inmates of the asylum; second, that the property having been taken without lawful authority, the plaintiff's title to it was not divested, and, it having been applied to the defendant's use, he could recover its value from the asylum in an action of trover.

Although the action in that case was in tort, it could as well have been in *assumpsit*.   3 Rob. Pr. (New), 399.

It was to recover the value of property which the defendant had the right to purchase for the maintenance of those entrusted to its care, and pay for out of the appropriation made for that purpose by the State; and the plaintiff's property having been converted to the use of the corporation for the same purposes for which it had authority to purchase it, it ought to have paid for it, and the court very properly held that an action would lie to compel it to do so.

The directors in this case clearly had no right to pay damages for the grievance complained of out of any funds under their control.   Those funds were appropriated by the State to pay the expenses of caring for and maintaining the inmates of the hospital, and not for paying damages resulting from the negligent management of those in charge of it.   If such damages were chargeable on the funds, or property under the control of the directors, their payment might prevent the accomplishment of the very object for which the money was appropriated.   The tax-payers might thus become insurers against the negligence of public officials, instead of being contributors for the support and maintenance of a great public charity.   That an unfortunate inmate of the hospital should suffer from the negligence or misconduct of the persons administering the powers of the corporation, or their agents or employees, is indeed a hardship, but we do not think that this hardship should be remedied by giving damages to such an one or his representatives at the expense of

the other inmates of the hospital, or of the tax payers of the State. For such negligence he should be left to his remedy against those by whose negligence he was injured, and whose liability for their own acts of negligence must be determined by the rules of law applicable to such cases.

It seemed to be conceded in argument that if the plaintiff could maintain his action and obtain judgment against the defendant he could not subject its buildings and grounds, or other property, to the satisfaction of the judgment, but would have to look to the Legislature for payment. If this be so, as we think it is, it shows that this action will not lie against the defendant, for if the plaintiff has no right to compel the defendant to compensate him for the grievance complained of, it is clear that he has no cause of action against it, for, as was said by Lord Holt in *White* v. *Ashby*, 1 Smith's Lead. Cas. 464, 483: "It is a vain thing to imagine a right without a remedy; for want of right and want of remedy are reciprocal." To make out a cause of action against a defendant, the plaintiff's legal rights must have been violated, and the defendant must be answerable therefor. Pomeroy's Remedies and Remedial Rights, sec. 519; Cooley on Torts (2 Ed.), 20. The courts of this State have no jurisdiction to ascertain and fix the damages for injuries which the plaintiff may have suffered in a case where the defendant is not liable, in order that the plaintiff may present his claim to the Legislature for payment.

We are of opinion that the demurrer to the declaration was properly sustained, and that the judgment of the Circuit Court should be affirmed.

HARRISON, J., dissenting:

I am unable to concur in the decision pronounced in this case. The question raised by the demurrer is the right of the plaintiff to maintain this action. This question is, in my opinion, *stare decisis* in this State, and ought not to be reopened. For years

the statute law of this State has declared the " Eastern Lunatic Asylum," now the " Eastern State Hospital," to be a corporation. There is no qualification respecting its character as a corporation, and it has therefore been deemed in all respects a corporation under the general law (sec. 1068 of the Code), with liability to be sued like other corporations. The contention that this institution, as a part of the State government, is not liable to be sued, was presented in the petition for a writ of error in the case of the *Eastern Lunatic Asylum* v. *Garrett*, 27 Gratt. 163. In that case Judge Staples, in speaking of this same institution, and in direct response to the question raised by the petition, says: " The asylum is a corporation, and as such may be sued in trespass or trover," and it was held liable, accordingly, for the wrongful conversion of chattels in an action of trover, which is an action arising *ex delicto*, and judgment given against it.

In the case of *McClanahan* v. *Western Lunatic Asylum*, 88 Va., 466, where the statute of limitations was relied on to defeat a claim asserted by the asylum against the administrator of a deceased patient for support, the contention was made that the asylum stood in the shoes of the State, and that the maxim " *nullum tempus occurrit regi* " was applicable in its favor; but this court held the contention unsound, sustained the plea of the statute, and declared the asylum to be a corporation with the power to sue and be sued, and entitled to, and amenable to, all legal defences pertaining to private persons.

Each of the cases cited, it seems, is necessarily overruled by the conclusion reached in the case at bar; for if the asylum be the *State*, in the broad sense it is now held to be, then it cannot be sued, and time does not run against its demands.

The decision in *Garrett's Case* has been acquiesced in as a correct determination of the question presented by this record, for more than twenty years; and in like manner the decision in *McClanahan's Case* has been accepted as a correct construction of the statute for nearly eight years.

Although the Legislature is called upon at every session to deal with the interests of these institutions, it has never seen fit to declare, by any change in the phraseology of the law, its disapproval of the view taken in either of the cases cited. Since the decision in *Garrett's Case* there has been a complete revision of the laws of the State, and it is worthy of note that the learned judge delivering the opinion in that case was one of the revisors, and yet no change in the law was then suggested in consequence of that decision; on the contrary, the revised Code of 1887, sec. 1661, significantly declares that " *the directors for each of said asylums and their successors shall, respectively, continue to be corporations.*"

It is a familiar rule of construction that when a statute has been construed by the courts, and is then re-enacted by the Legislature, the construction given to it is presumed to be sanctioned by the Legislature, and thenceforth becomes obligatory upon the courts. *Mangus* v. *McClelland,* 93 Va. 786. With great respect, it seems to me that the conclusion of the majority of the court wholly disregards this wise and well settled canon of construction.

It is contended that a judgment in this case would be ineffectual, if obtained, there being no property out of which it could be made. This question does not arise on demurrer, and if it did, we ought not to be influenced in determining the right to maintain the action, by any consideration of the plaintiff's ability to make his judgment available.

If it be true, as contended, that application to the Legislature for payment of the judgment, if obtained, would be the only way in which satisfaction could be secured, the aggrieved party is denied that resource by the conclusion that he cannot maintain his action at all; for until the amount of damage sustained has been ascertained by a jury, he has no claim to present.

*Affirmed.*