## Wytheville.

GREEN'S AND PARKER'S ADMINISTRATORS V. MARYE, AUDITOR.

June 8, 1911.

Absent, Keith, P., and Harrison, J.

1. PRINCIPAL AND AGENT—*Compensation of Agent—Performance of Work.*—Where an agent assumes to do a specified act, he has no right to compensation therefor, as a general rule, until the specified act has been substantially performed. The same rule, as to the agent's compensation, applies to agents appointed by a State as to those appointed by natural persons.

2. PRINCIPAL AND AGENT—*Agent to Collect Claim of State—Compensation—Case at Bar.*—The evidence in the case at bar does not show that the agents appointed by this State to recover a claim of the State against the United States rendered any services for which they are entitled to compensation, under their contract with the State, but, on the contrary, that after their efforts had proved unavailing, the State effected a settlement with the United States through the efforts of her representatives in Congress unaided by said agents.

Error to a judgment of the Circuit Court of the city of Richmond upon a petition filed by Green's and Parker's administrators. Judgment for the defendant. Petitioners assign error.

*Affirmed.*

The opinion states the case.

*E. Beverly Slater, H. R. Pollard, Hardcastle & Wynn* and *Munford, Hunton, Williams & Anderson,* for the plaintiffs in error.

*Samuel W. Williams, Attorney-General,* and *Richard B. Davis, assistant to the Attorney-General,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

George B. Stone, administrator of Bernard P. Green, deceased, and Frank D. Wynn, administrator of John A. Parker, deceased, filed their petition in the Circuit Court of the city of Richmond, pursuant to sections 746 and 747 of the Code of 1904, against Morton Marye, Auditor of Public Accounts, in which it is claimed that the Commonwealth of Virginia is indebted to the petitioners' intestates in the sum of $172,358.26, with interest thereon from the ———— day of April, 1903, being ten *per cent.* of $1,723,582.63, which it is alleged was collected by the Commonwealth of Virginia on account of advances made by Virginia to the United States government for aid in carrying on the war with Great Britain, beginning in the year 1812.

The cause was heard before the circuit court upon said petition, the demurrer and answer of the Auditor of Public Accounts thereto and the evidence. Whereupon, the judgment to which this writ of error was awarded was entered, denying the relief asked by the petitioners and dismissing their petition, with costs to the Commonwealth.

In the view that we take of the case, it is immaterial whether the proceeding is to be regarded as one at law or in equity; or whether the evidence has been incorporated into the record by a proper bill of exceptions or not; or whether the alleged agency of petitioners' intestates was joint or several; or whether the alleged contract upon which this action is brought should be construed to be a contract for procuring legislation, and, therefore, void as *contra bonos mores.*

Coming to the consideration of the case upon its merits, it appears that during the war with Great Britain, beginning, as above mentioned, in 1812, Virginia and other States of the Union advanced to the United States government certain moneys for military purposes, which the

45

United States regarded and treated as advances spent for the benefit of the United States government, and therefore a debt payable by the latter, with interest. The rule adopted by the government by which the interest upon these advances was to be calculated or computed brought forth a formal protest from the States which had made these advances and delay in their settlement followed. Pursuant to an act of Congress theretofore passed, the Secretary of the Treasury, on the 8th of January, 1859, reported that upon a readjustment of the account and a proper computation of interest, Virginia would be entitled to $339,312, with interest from 1833, whereby the amount due the State of Virginia was fixed and determined by the Secretary of the Treasury as of the said date. On February 14, 1859, the Governor of Virginia, Hon. Henry A. Wise, received a communication from John A. Parker, Esq., stating that a large balance seemed to be due the State from the United States, whereupon Governor Wise authorized Parker to examine and report upon this claim, and on February 10, 1860, the General Assembly of Virginia passed a joint resolution continuing Thomas Green (who had been appointed by the General Assembly in 1850 to prosecute said claim), and John A. Parker, as agents *to recover* of the United States government the said claim, and directing that upon recovery being made, "It shall be the duty of said agents to obtain payment of the same by draft from the United States government, . . . but if paid in U. S. stock or bonds the same shall be transmitted to the Auditor, and the Auditor is hereby directed to pay to the said agents three *per cent.* commission on such amount as may be by them recovered."

Prior to the adoption of the resolution of February 10, 1860, *supra,* to-wit, in 1858, the Commonwealth of Virginia became indebted to the United States government upon certain bonds or certificates of indebtedness of Virginia ob-

tained by the United States by purchase on account of certain Indian trust funds, and amounting to $581,000, with interest.    Upon this sum Virginia paid interest up to 1861, when default was made, and of course it was thereafter claimed on behalf of the United States government that said indebtedness of Virginia was to be credited upon the indebtedness of the United States government to Virginia—*i. e.*, that the one was to be set off against the other as a matter of accounting.

Thomas Green died about the year 1877, and on March 12, 1884, an act of the General Assembly was passed which provided, "That Bernard P. Green is hereby appointed in the place of the said Thomas Green (his father), deceased, to prosecute, in association with the said John A. Parker, to settlement, the said claims of the State of Virginia against the United States, upon the terms and conditions specified by the act or acts creating the said Thomas Green and John A. Parker agents as aforesaid, except so far as the said terms are in conflict with this act."

(2) "That the Treasurer of the State is hereby authorized and directed to pay to Bernard P. Green and John A. Parker, jointly, and upon their receipts, ten *per centum* of any sum or sums appropriated by the Congress of the United States for the payment of said claims, and paid to the State for amount due from the United States."

John A. Parker died in 1895, and Bernard P. Green in September, 1902.

On the 14th of November, 1899, Green made a report to the governor of Virginia, in which he gave a statement of the efforts that had been made by him and his associate, Parker, to *recover* the several amounts claimed as due from the United States to Virginia, and said:   "Our claim, of course, as it now stands, is not recognized by the treasury; and, therefore, if the United States should ever owe Virginia for anything, past or future, nothing will be paid her

until these bonds are satisfied. The United States statute forbids it. I, therefore, respectfully submit, as the efforts of Virginia to secure a settlement of this account, for two-thirds of a century, have brought no relief from Congress, it is now expedient that the accounts between the State of Virginia and the United States be referred to the Supreme Court of the United States for a speedy and final adjustment."

Whatever may have been the reasons for the change in the amount of commissions to be allowed on any sum or sums *recovered* by Green and Parker from three *per cent.*, which had been originally provided, to ten *per cent.*, as fixed by the act of March 12, 1884, it was bound to have been understood by all concerned, and especially by Green and Parker who were conversant with the situation, that in any settlement made of the claims of Virginia against the United States, the latter would be entitled to have taken into account the indebtedness of Virginia to the United States upon the bonds referred to in the report of Green in 1899, *supra*. It is very true that when the act of March 12, 1884, was passed the bonds of the State of Virginia held by the United States, upon their face, did not become due till 1894, but the interest thereon was payable annually and had not been paid since 1861. Certainly nothing had been accomplished by Green and Parker when said bonds became payable in 1894, nor by Green after Parker's death in 1895, for the latter's report to the governor in 1899 admits of no other construction than that all his efforts had proven fruitless, and that nothing had been accomplished by any agency or efforts that had been put forth by himself, or by his father, or by Parker, who had from time to time been representing the State; indeed, the long and earnest efforts of our representatives in Congress to secure by act of Congress a settlement of the claims of Virginia against the United States had at that time been of no avail.

The bonds, etc., of the State, held by the United States, having matured in 1894, suit for the enforcement of their payment was threatened by the United States, as authorized and directed by the Fifty-fifth Congress; whereupon Virginia's senators in that body arranged with the Attorney-General of the United States for a postponement of the bringing of the said suit in order that they might have opportunity to get Congress to pass such legislation as was necessary to effect a settlement of the respective claims of Virginia and the United States, and to do justice with respect thereto without litigation in the courts; and subsequently a successful effort was made in the Senate to have incorporated in "the omnibus claims bill" an amendment, which was retained in the bill when it was finally passed by the House of Representatives, providing for a settlement of the claim of Virginia by an offset against the claim of the bonds of Virginia held by the United States government, as of the dates, respectively, at which the accounts would be completely or most nearly balanced; and the balance found due on such date, after deducting the principal and interest on said bonds or other evidences of debt to such date, should be paid to or by the State of Virginia. Said statute applied alike to claims held by the city of Baltimore and other States of the Union similar to the claim asserted by Virginia. After the said statute became effective, the settlement contemplated and provided for with respect to the claim of Virginia against the United States was taken up by our senators, the then Governor and the Second Auditor of Virginia, and in April, 1903, a final settlement was reached, whereby the sum of $5.50 was found to be the balance due Virginia, which balance was paid into the treasury of the State by the United States.

The proof in the record is conclusive that the plan for the settlement of this controversy, authorized by the said act of Congress, was conceived and the final settlement

effected pursuant to the statute without any aid or suggestion from Bernard P. Green (Parker being then dead); and there is proof also that he did not and could not have aided in the efforts made by our representatives in Congress to secure the passage of said act, but that any activity on his part or on the part of any other paid agent of the State in that connection would probably have been more hurtful than helpful.

As we have seen, this action is founded upon an alleged contract between the Commonwealth of Virginia and Bernard P. Green and John A. Parker, arising out of the act of the General Assembly, approved March 12, 1884, whereby it is claimed that Green and Parker became entitled to ten *per cent.* commissions on the full amount of the claim that Virginia was asserting against the United States government, without deducting therefrom the amount of the bonds and interest owing by the State which were then held by the United States; and such is the claim asserted in this action by plaintiffs in error, notwithstanding it was, as has been observed, known of all parties interested, including plaintiffs in error's intestates, when said act of March 12, 1884, was passed, that the United States held the said bonds against the State of Virginia. And it must of necessity have been also known by all parties interested that Virginia was relying upon the cancellation of these bonds as a payment *pro tanto* of the claims she held against the United States.

Aside, however, from this view of the case, let us see what, if anything, was done by Green and Parker pursuant to the said act of March 12, 1884, which entitled plaintiffs in error to a recovery upon the claim they are here asserting. Certainly nothing was done by Green and Parker up to the death of the latter in 1895, and nothing by Green up to the date of his report to the Governor of Virginia in November, 1899, for he distinctly says, that

"the efforts of Virginia, continued for two-thirds of a century, to secure a settlement of Virginia's claim against the United States had brought no relief from Congress," and suggested a course of action to be taken by the State entirely foreign to the line of action contemplated by whatever agency was conferred upon him and his associate, Parker, by the act of March 12, 1884. In other words, Green plainly, in his said report to the Governor, abandoned all hope of beneficial results to Virginia from the efforts that he and Parker had made, or that he could thereafter himself make, and the record in this case does not disclose a single act or suggestion on his part after the date of his report in furtherance of the aim and purpose of Virginia to have her claim against the United States adjusted and finally settled.

We are unable to appreciate the force of the argument of the learned counsel for plaintiffs in error, that if Green and Parker were diligent in trying to effect a settlement of Virginia's claim, they were entitled to their commissions thereon, whether or not their efforts brought about a settlement of the claim, or it was accomplished by some other agency; nor do we (for the reasons already given) recognize any force in the argument that when Virginia admitted the validity of her obligation held by the United States, and agreed that it should be treated as an offset against the claim which she had contracted with Green and Parker to prosecute, and thereby put it beyond the power of said agents to effect a settlement upon any other basis, said agents were nevertheless entitled to their commissions on the aggregate amount for which Virginia was given credit in the settlement of her claim under the act of Congress of May 27, 1902.

It may be, as counsel contend, that "If one contracting party can show that the other prevented his performance, it is to be taken as *prima facie* true that he would have

accomplished it, if he had not been thus stopped;" but that is by no means the case here. There is no foundation whatever for the contention that the State of Virginia in any way prevented Green and Parker, or the first named after the latter's death, from accomplishing the purpose they undertook pursuant to the contract with them set out in the said act of the General Assembly approved March 12, 1884. No such claim was made by Green or Parker in their lifetime or could have been made. The fact is they undertook, pursuant to said act, to prosecute to *a settlement* the claims of the State of Virginia against the United States upon certain terms and conditions specified in an act or acts theretofore creating Thomas Green and John A. Parker agents for the same purpose, and were to receive as their compensation "ten *per centum* of any sum or sums appropriated by the Congress of the United States for the payment of said claims and paid to the State for amount due from the United States." This action, as we have seen, is founded on said statute of March 12, 1884, and the complaining parties, plaintiffs in error, have utterly failed in their proof to fix upon the State of Virginia any liability to their intestates under that act.

. The principle of law with respect to the right of an agent to compensation for his services, applicable here, is the same as that which applies to agencies of like character, generally, viz: that where the agent assumes to do a specified act, until the specified act is performed or substantially performed (except in exceptional circumstances, none of which apply here) no right to compensation arises to the agent. The agency must be fully completed. Mechem on Agency, sections 610, 635, 682; *Crockett* v. *Grayson*, 98 Va. 354, 36 S. E. 477; *Parker* v. *Building & Loan Asso.*, 55 W. Va. 135, 46 S. E. 811; 1 A. & E. Ency. of L., 1101, 1111, and cases cited.

We do not intend by anything said in this opinion to dis-

parage the diligent and intelligent efforts of both Green
and Parker, or those of Green after Parker's death, in
trying to bring about the desired settlement of Virginia's
claim against the United States; but the fact is, as Green
frankly stated in his report of 1899, that all of their efforts
were without avail, and we know of no principle of law
which denies the right of the State thereafter to effect a
settlement of her claim through the efforts of her repre-
sentatives in Congress without subjecting herself to liability
to plaintiffs in error's intestates for commissions on the
amount of her claim, set off by the United States in the
settlement finally made under the act of Congress, the
passage of which was procured by the unaided efforts of
the State's representatives in that body.

There is no error in the judgment of the circuit court
complained of and, therefore, it is affirmed.

*Affirmed.*