SADIE JASPER, ADMINISTRATRIX OF THE ESTATE OF
JOHN JASPER, DECEASED,

*v.*

STATE OF ILLINOIS.

*Opinion filed December 17, 1914.*

1. GOVERNMENTAL FUNCTION—*State in conducting hospital exercises.* The State in conducting the Anna State Hospital exercises a governmental function, and is not liable for the death or injuries to those it employs.

2. RESPONDEAT SUPERIOR—*rule of does not apply to State.* The rule of *respondeat superior* does not apply to the State.

3. PRACTICE—*claimant not precluded.* Under the facts in this case, the Court does not preclude the claimant.

James Lingle, for Claimant.

P. J. Lucey, Attorney General, and Arthur R. Roy, Assistant Attorney General, for State.

John Jasper, an employee of the State in the Anna State Hospital, was killed in a dough-mixing machine in the bake-room at the hospital on May 22, 1913. Letters of administration were subsequently issued to the claimant in the county court of Union County.

The facts in evidence with reference to the accident wherein claimant's intestate met his death are as follows: He had been employed as a baker at the hospital for about seven years, and had been head baker, but at the time of the accident the bake-room was in charge of the first cook, and decedent was doing the work without an assistant. The only person present in the room at the time of the accident was a patient at the hospital, and nobody who saw the accident has testified in this case.

Decedent alone was in charge of the mixer and did all of the baking of bread, etc. Claimant charges that the force doing the work was inadequate, notwithstanding, that the work had greatly increased, and that as a result, it became necessary for the decedent to do his work in the particular way which caused his death.

Decedent was working on a dough-mixer which was about five feet ten inches high, three and one-half feet square and had a capacity of three barrels.   In this mixer there were two iron arms and an iron shaft. In mixing the dough, the arms revolved about ten revolutions to the minute, and came to within about one-eighth of an inch of the sides of the mixer.   The dough was thrown against the sides of the tub, and about every three or four minutes, it had to be scraped off by means of a dough knife in the hands of the operator. Decedent, to do this work, stood on an iron rod on the mixer, would hold on with one hand and scrape with the other.   The mixer was run by electric power and was operated by means of a switch in front of the machine and near the floor.   Claimant complains that there was no fuse by which the mixer would automatically stop when it received an overload, contending, that if such fuse had been used when decedent was caught in the mixer, the fuse would have blown out and caused the machine to stop, and decedent would have met only with an injury instead of death.   It is also shown by the evidence of one witness, that it is usual for bread-mixers to be so adjusted.

On the morning that decedent met his death, one witness had just stepped from the room and upon returning five minutes later discovered that deceased was in the mixer.   The mixer was not running, the patient having apparently thrown the switch.   When Mr. Jasper was taken from the mixer he was dead. The dough knife was found in the mixer and it is apparent that deceased was caught in the mixer while in the act of scraping the dough from the back side of the mixer.

In addition to charging negligence in failure to furnish sufficient. help, claimant charges that the State failed to use reasonable care to provide safe machinery, and also charges negligence in failing to guard the machine.

The State argues that it is not liable because it was exercising a governmental function in conducting the hospital, and that there is no proof of negligence which would warrant a recovery, were the former defense not interposed.

On the first proposition advanced by the State, in view of the repeated decisions of this Court upon the same subject, we must hold that in this case, the State cannot be held to respond in damages. In *Taylor* v. *State,* opinion filed May 22, 1914; *Jorgenson v. State,* October Session, 1911, and *Allen* v. *State,* October Session, 1906, among many other opinions filed by this Court, this question has been determined.

In the absence of a statute assuming liability by the State for damages sustained in this institution, there is no law which would warrant our making an award for the claimant in this case. Even though the State has provided this Court as a forum, wherein claims shall be heard and determined in manner as provided by law, we have uniformly held to the correct principle, that by so doing, it had not undertaken liability or increased or enlarged its liability in any particular.

Counsel for the State in this case have cited the case of *Maia* v. *Eastern State Hospital,* 97 Va., 507, 47 L. R. A., 577, and the language in that case well states the reason for the defense interposed by the State:

"If a municipal corporation, which has a two-fold character, one public and the other private, is exempt from liability for the negligence of its agents when in the exercise and performance of its powers and duties as an agency of the government, a public corporation which was created and exists for no other than governmental purposes must necessarily be exempt from such liability. Otherwise, there would be this anomaly: That for such negligence a corporation created partly for governmental purposes would be exempt from liability, while one created wholly for such purposes would not

be, when the reason for such exemption is solely because it was in the exercise of governmental functions when the negligence occurred.''

Of course, there is no question but that the State, in the conduct of the Anna State Hospital, was exercising solely a governmental function.

But the State has given to this Court power to reject a claim so that claimant shall be precluded from further remedy, or to reject without prejudice, so that claimant may present her claim to the legislature.

For the purpose of ascertaining whether or not this claim is of such nature that it should or should not be precluded by the judgment of this Court, we propose to investigate further.

It is shown by the evidence, that claimant's intestate could have done the work by stopping the machine and scraping off the dough and again starting the machine. This would have necessitated delay in the work without doubt, and under the circumstances would have subjected decedent at least to censure. It is not apparent from the evidence how any guard would have prevented the accident. It might be true that decedent might not have met his death, if a suitable fuse had been used, yet this goes into the realm of speculation. One of the witnesses testified, that he might have had his arm broken, but of course even this might result in death. He might also have had his neck broken. The evidence states that the insane patient probably turned off the power when decedent was caught in the machine. He did no more nor less than another employee could or would have done, and we cannot entirely reconcile this statement with the charge that there were not sufficient employees.

On the other hand, this is a case which strongly appeals to the sympathies of the Court. Were this a trial before a jury, we, as lawyers, believe we could predict what the average jury would find on these questions of fact. Shortly after the happening of this accident, the State adopted the policy of compensating

employees and dependents of deceased employees for injury or death while in the service of the State. Claimant in this case missed the benefit of this law by a very few days. Under the circumstances we would not feel justified, if by our judgment we precluded claimant from presenting her claim to the legislature, and accordingly this claim is rejected, without prejudice to the right of claimant, to present her claim to the legislature.