# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## Commonwealth v. Chilton Malting Company.

March 13, 1930.

Absent, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*John R. Saunders, Attorney-General,* and *Leon M. Bazile* and *Edwin H. Gibson, Assistant Attorneys-General,* for the Commonwealth.

*Woods, Chitwood, Coxe & Rogers,* for the defendant in error.

PRENTIS, C. J., delivered the opinion of the court.

The Commonwealth of Virginia complains of a judgment against it in favor of the Chilton Malting Company for the sum of $1,218.64, with interest from May 29, 1929, the date of the judgment.

The facts out of which the controversy arises are: The company is a Wisconsin corporation. It received a letter, dated August 11, 1925, from one S. W. Shiveley, upon a letter head showing that he was a dealer in general merchandise and country produce, Columbia and Grand Opera Graphophones, and that his address was Ferrum, Virginia. This letter read: "Please write me latest prices on Barley Malt Del. at Ferrum, Virginia B/L attached in ninety-six pounds to *tye* bag in good sacks. Car lots, and oblige, Otter Creek Feed Company, Per S. W. Shiveley."

The plaintiff replied thus:

"August 14, 1925.

"OTTER CREEK FEED COMPANY,
   "S. W. SHIVELY,
      "Ferrum, Virginia.

"DEAR SIR:

"We beg to acknowledge receipt today of yours of August 11th inquiring for price on malt ninety-six pounds to the bag, car lots, track Ferrum, Virginia.

"Basis the present market and subject to your wire acceptance at our expense, beg to quote you a price of $1.15 per bushel of thirty-four pounds, track, Ferrum, net to you, draft B/L attached, packed ninety-six pounds to the bag in 1-10½ oz. burlap and paper liner.

"No doubt this is the package you desire as it was what we had shipped you previously, but should you prefer to have it shipped in two liners the cost would be $1.16 per bushel, but believe the first package will meet your demands.

"We thank you for the inquiry and hope to receive your valued order.

"Yours very truly,
      "CHILTON MALTING COMPANY.

"GJB:LB

"N. B. The above quotation is on 1924 crop barley malt. The new crop of barley is not yet sufficiently seasoned for use."

Thereupon Shiveley wired the plaintiff: "Your letter fourteenth. Ship four hundred twenty bags at once. Otter Creek Feed Company."

Whereupon the company shipped 420 bags of malt to the Otter Creek Feed Company, sending a draft with bill of lading attached, to the First National Bank, Ferrum, Virginia. When the malt reached Roanoke it was seized by the agents of the Federal and State prohibition departments. After its seizure Calvert, the State prohibition inspector, sought to ascertain who represented the consignee, Otter Creek Feed Company, but could find no such company nor person in business under that name at or near Ferrum, in Franklin county. It is shown that Shiveley had a bad reputation as a violator of the prohibition law at the time the malt was shipped and seized, and that his bad reputation was a matter of common knowledge in the neighborhood in which he lived. It is also shown that malt is not used in Franklin county except for the manufacture of ardent spirits.

The two inspectors, State and Federal, appear to have been acting under the general direction of the Prohibition Commissioner of the Commonwealth, by authority of section 16 of the Virginia act (Acts 1924, chapter 407), which reads: "It shall be unlawful for any person to sell, give away, transport, distribute or have in his possession any malt, malted grain, or any mixture thereof, other than in a private home and all officers charged with the duty of enforcing the prohibition laws of this State, or the United States, are authorized to seize any such malt, malted grain or

mixture thereof wherever found, other than in a private home, without a warrant, and to destroy the same. Any person violating the provisions of this act shall be deemed guilty of a misdemeanor.''

Section 98 of the same act provides: "This entire act shall be deemed an exercise of the police power of the State for the protection of the State; for the protection of the public health, peace and morals, and the prevention of the sale and use of ardent spirits, and all of its provisions shall be liberally construed to effect these objects.''

The officials being unable to identify or notify the consignee of the malt, it was delivered to the authorities of the Virginia Polytechnic Institute, at Blacksburg, Virginia, where it was mixed with certain cattle feed and fed to the cattle in charge of or owned by that corporation.

The company claims the right to sue the State under Code, sections 2173 and 2578, which read:

"*Section 2173. What claims to be presented to Auditor.* Any person having any pecuniary claim against the Commonwealth upon any legal ground may present the same to the Auditor of Public Accounts, except in those cases in which the claim, if allowed, would be chargeable to the State Board of Education, State Corporation Commission, or any corporation composed of officers of government, of the funds and property of which the State is sole owner."

"*Section 2578. Where claims against State prosecuted.*—When the Auditor of Public Accounts shall disallow, either in whole or in part, any such claim against the Commonwealth as is provided for by section twenty-one hundred and seventy-three, the person presenting such claim may petition the Circuit Court of the city of Richmond for redress. And where a

person has any other claim against the Commonwealth, redress may be obtained in the said court, by a petition or by a bill in chancery, according to the nature of the case."

The first error assigned and the only one which we deem it necessary to discuss, may be thus stated: This is an action brought against the Commonwealth for an alleged tort, and it is claimed that no such action can be maintained against the Commonwealth; and that the demurrer of the defendant to the notice should have been sustained.

That trover and conversion is an action *ex delicto*, seems to be unquestioned. *Ferrill* v. *Brewis*, 25 Gratt. (66 Va.) 767; 21 Ency. Pl. & Pr., page 1013.

In *Aschermann* v. *Philip Best Brewing Co.*, 45 Wis. 266, the action was for trover and conversion of certain ice owned by the plaintiff, alleged to have been destroyed by the defendant by opening certain slides and exposing the ice to heat which melted it. This wrongful destruction of goods by one not the owner thereof was held to be a conversion of the goods destroyed.

It is claimed for the plaintiff that even though the original conversion was a tort, the malt was converted to the use of the Virginia Polytechnic Institute, a corporation, one of the educational institutions of the State, and the plaintiff had the right to waive the tort and sue for damages as upon an implied contract, in assumpsit, for the value of the property converted. That this is one of the general rules as to actions between private litigants seems to be quite well settled. *Tidewater Quarry Co.* v. *Scott*, 105 Va. 160, 52 S. E. 835, 115 Am. St. Rep. 864, 8 Ann. Cas. 736, states this doctrine. Burks Pl. & Pr. (2d ed.), page 107; Cooley on Torts (3d ed.), page 160, (107).

Relying upon this sound principle, it is urged here

for the company that this is not an action for the tort, but that the tort has been waived, and that it has the right to sue upon the implied promise to pay the value of the property. This rule, while sound, is inapplicable here. Instead of suing the persons who committed the alleged tort, the Commonwealth is sued upon the false assumption that it has converted the property to its own use and derived some benefit therefrom. The contention cannot be sustained because the Commonwealth, as such, has received no benefit from the wrong, if any, committed against the plaintiff company.

This quotation from *Nelson County* v. *Coleman*, 126 Va. 275, 101 S. E. 413, 414, is cited as supporting this proceeding: "In support of this assignment it is contended that the action is necessarily an action in tort, and that, therefore, the county cannot be sued upon such a claim. The case of *Fry* v. *County of Albemarle*, 86 Va. 195, 9 S. E. 1004, 19 Am. St. Rep. 879, is relied upon. While there can be no doubt whatever about the fact that neither counties, which are political subdivisions of the State, nor the State, or its governmental agencies, can be sued in tort (*Stuart* v. *Smith-Courtney Co.*, 123 Va. 231, 96 S. E. 241), it is also generally true that where a tort is committed which involves an injury to personal property, the plaintiff may waive the tort and sue upon an implied contract to pay for the property which has been wrongfully taken, damaged or converted to the defendant's use. Of this as a general doctrine, there can be no doubt whatever."

It should be observed, however, that in affirming the recovery in that case, it was clearly shown that the defendant county of Nelson had unlawfully appropriated land belonging to the plaintiff and had it in

use as a public road. As has been shown, however, in this case the defendant named, the Commonwealth, as a political entity, has neither taken the property of the company nor used it for its own purposes.

There have been some interesting and pertinent cases in Virginia, among them *Eastern Lunatic Asylum v. Garrett*, 27 Gratt. (68 Va.) 163. In that case certain food-stuffs had been taken during the war between the States, under authority of the commanding officer of the Federal troops, then stationed at Williamsburg, delivered at the Eastern Lunatic Asylum, and used to feed the inmates. It was there held, not (as seems to be assumed in argument) that the Commonwealth could be sued, but that under the facts shown there might be a recovery against the corporation, the Eastern Lunatic Asylum (an agency of the Commonwealth), for the value of the food-stuffs so converted. The authority of this case is greatly weakened, however, by *Maia's Adm'r v. Eastern State Hospital*, 97 Va. 507, 34 S. E. 617, 47 L. R. A. 577. In that case the action was trespass on the case for death alleged to have been caused by the negligence of the authorities of the asylum, and it was held that the action could not be maintained against that corporation because, being an agency of the State, it was not answerable for such a tort. Certainly if not maintainable against the corporation agency of the State, it cannot be maintained against the principal.

In *Stuart, Governor, v. Smith-Courtney Co.*, 123 Va. 231, 96 S. E. 241, 242, this court affirmed a judgment against the members of the Convict Lime Board, the Auditor of Public Accounts, and the Treasurer, upon a claim arising out of a contract with the Convict Lime Board. It is observed, in passing, that the Convict Lime Board was not a corporation. The

defendants there claimed that being a suit against the State government, or a board created by the State for governmental purposes, it could not be maintained without the consent of the State, the statute creating the State Lime Grinding Board not having authorized it either to sue or to be sued. It was held that the suit could be maintained as upon a contract under the sections of the Code by which the Commonwealth has consented to be sued in its own courts, the same sections which are now relied upon by the plaintiff company here. This was said there: "The question is not a new one in this State, and it may be regarded as settled that proceedings based upon contracts will lie against the State and its agencies by authority of this statute. Sections 747, 748 and 749 (now corresponding to sections 2579, 2580 and 2581), immediately following, provide for the procedure, while section 750 (2582) limits the effect of judgments or decrees which may be rendered against the Commonwealth in such proceedings. *Dunningtons* v. *Northwestern Turnpike*, 6 Gratt. (47 Va.) 160; *Higginbotham's Executrix* v. *Commonwealth*, 25 Gratt. (66 Va.) 637; *Eastern Lunatic Asylum* v. *Garrett*, 27 Gratt. (68 Va.) 163; *Parsons* v. *Commonwealth*, 80 Va. 167. It is also true that the statute does not authorize actions against the State or its governmental agencies based upon torts. *Sayre* v. *Northwestern Turnpike*, 10 Leigh (37 Va.) 454; *Maia's Adm'r* v. *Eastern State Hospital*, 97 Va. 507, 34 S. E. 617, 47 L. R. A. 577. Nor can suits to establish mechanics' liens against public property be maintained. *Phillips* v. *University of Va.*, 97 Va. 472, 34 S. E. 66, 47 L. R. A. 284. That the statute will be liberally construed is also indicated in *Green* v. *Marye, Auditor*, 112 Va. 352, 71 S. E. 555, where, in the view which the court took of that case, it is said: 'It is

immaterial whether the proceeding is to be regarded as one at law or in equity; or whether the evidence has been incorporated into the record by a proper bill of exceptions or not; or whether the alleged agency of petitioners' intestates was joint or several; or whether the alleged contract upon which this action is brought should be construed to be a contract for procuring legislation, and, therefore, void as *contra bonos mores.*'

"The demurrer then was properly overruled, for the Commonwealth will not be astute to escape inquiry into its liability for its alleged contracts, or to take advantage of technical defenses which are permissible to other litigants."

It seems to us, then, that this case cannot be maintained against the Commonwealth, because it is based upon a tort, and it is not true that after the alleged tort the property was converted to the use of the Commonwealth. Therefore, the court should have sustained the demurrer to the notice of motion. Whether it could be maintained against any individuals it is not proper for us to decide because they are not before the court.

There are a number of other assignments of error, and the written briefs are able and learned, discussing many questions which, though serious in import, will not be decided on this record, because there is no defendant before the court who would be bound by the decision. Among the important questions so discussed is the contention that section 16 of the prohibition act is unconstitutional because it is claimed that malt is a legitimate article of commerce and that no notice is by the statute required to be given to the owner of the intention of the State to confiscate it as contraband. If the act declaring malt to be contraband is a valid exercise of the legislative power, no

notice to the owner would be necessary, and such an action would fail because there has been no tort. Of course, if the individuals who committed the alleged wrong were acting under an act which is unconstitutional, the statute does not afford them any immunity.

For the reasons which we have indicated, we are of opinion to reverse the judgment and enter final judgment in favor of the Commonwealth.

*Reversed.*